FURNESS, WITHY & COMPANY, LIMITED,
A CORPORATION,

*vs.*

BLANCHARD RANDALL, GEORGE S. JACKSON ET
AL., CO-PARTNERS TRADING AS GILL & FISHER.

*Charter parties : construction.   Contracts : province of court and
jury ; impossibility : destruction of subject-matter.
Rescission of contracts.   Parol evidence.
Usage and custom.*

Where by a charter party it is agreed that the owner of a line
of ships will furnish one of such ships, about a certain time for
freight at a certain port, subsequent notice by such owner, to
the shipper, naming a particular ship for that service, if assented
to by the shipper, modifies the contract, to the extent of sub-
stituting a contract for that particular ship in place of the
open contract for any ship of the line.                    p. 107

The fact of such notice by the owner and of assent to it by
the shipper is a question that should be left for the determina-
tion of the jury.                                          p. 107

Parol evidence is not admissible to add to, detract from or very the terms of a written contract.                    p. 106

But parties to a contract, may, by mutual consent, rescind it, enter into a new contract, or modify the existing one.    p. 106

The construction of a written contract is for the Court.
                                            p. 107

But where one of the parties to a written contract attempts to modify it, in due time, by a notice to the other, to which the other neither assents nor dissents, the question of what the contract was is for the jury.                    p. 107

Where the performance of a contract depends on the continued existence of a given person or thing, it implies a condition that impossibility arising from the perishing of such person or thing excuses performance.                    p. 108

Where by a charter party the owner of a vessel agreed to have it at a port named at or about a certain date to carry a cargo for the shipper to a named port, and in the meanwhile the vessel so named was lost, without any fault of the owners, such facts constitute a good defense in a suit by the shipper against the owners for breach of contract.            p. 108

The refusal of a Court to allow immaterial questions to be asked presents no reversible error.                    p. 109

The usage of parties may sometimes be shown in evidence, but mere usage or custom can never be received to modify the express terms of a contract.                    p. 109

*Decided June 26th, 1914.*

Appeal from the Superior Court of Baltimore City. (BOND, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BURKE, THOMAS, URNER and STOCKBRIDGE, JJ.

*John B. Deming* (with a brief by *Whitelock, Deming & Kemp*), for the appellants.

*Robert E. Lee Marshall* (with whom was *Arthur George Brown* on the brief), for the appellees.

STOCKBRIDGE, J., delivered the opinion of the Court.

The plaintiffs in this case were and are grain commission merchants in the City of Baltimore. The defendant is a corporation owning and operating a "Line" of steamers of irregular sailing between Baltimore and Leith, Scotland, the vessels being what are frequently called "Tramp" steamers, and actually performing their voyages only when there was a ship load of freight to be carried. On the 26th September, 1911, an agreement was entered into in the following language:

"DRESEL, RAUSCHENBERG & Co.

Agents Furness Line.

Freight Contract.

Contract No. 66.                    Baltimore, Sept. 26, 1911.

Engaged from Gill & Fisher. For shipment per S. S. Furness Line. Intended to load December, for Leith, Scot. To be ready when called for on or after Dec. 1st. Shippers option of cancelling engagement if vessel not ready to receive on or before Dec. 30th. Description of engagement 2000 quarters grain. Rate of freight 2/11½ per quarter. Subject to conditions of bills of lading. If different kinds of grain be shipped, no parcel to be under 2000 qrs. without agent's approval. General cargo insurance. To be forwarded on last steamer in December.

(Signed)   DRESEL, RAUSCHENBERG & Co., AGENTS.

O. K.

G. & F."

No vessel appearing the last of December to fulfill the engagement above set out, there was a violation of contract and this suit was brought to recover damages for such violation. The defendant appeared to the action, and filed three pleas, of which the third is in the following terms:

"And for a third plea that the Steamship Amana belonging to the defendant sailed from Leith, Scotland, on December 1st, 1911, bound for the Port of Baltimore, Md., where she was due to arrive on or about December 20, 1911; that at the time of sailing the said steamship was tight, staunch and fully manned and equipped for said voyage; that on December 2, 1911, the defendant nominated said Steamship Amana, which was expected to sail from Baltimore for Leith on her return voyage on December 27, 1911, and which was the last ship of the defendant sailing during that month, to fill its contract to carry for the plaintiffs 2000 quarters of grain from Baltimore to Leith during the month of December, 1911, on the last ship of the defendant sailing during that month; and the nomination of said steamship for said contract was accepted by the plaintiffs; that the said Steamship Amana has never been heard from since December 1, 1911, the date of her sailing from Leith for Baltimore, but became a total loss upon the high seas by reason of perils of the sea, and without fault or neglect on the part of the defendant, and that the loss of the said steamship rendered it impossible for the defendant to perform its said contract with the plaintiffs."

A demurrer to the third plea was interposed and sustained, and thereupon the defendant filed a fourth plea, which set out substantially the same defense as that attempted to be set up in the third plea, but set it out in somewhat fuller detail, alleging in addition that the agreement of September 26th was not the entire agreement between the parties. A demurrer to this plea was also sustained, and thereupon the

case went to trial.  There are four bills of exception relating
to testimony and to a tender of evidence, and a fifth bill
taken to the action of the Court upon the prayers.  The
rulings of the Court upon the testimony and upon the prayers
followed for the most part as a necessary and natural sequence
to the ruling upon the demurrers to the third and fourth
pleas, and if those rulings were correct the several bills of
exceptions are not well founded.  The exceptions and the
demurrers may, therefore, properly be considered together.

It is pertinent to state and to keep in mind one or two
additional facts in order to accurately apply the law govern-
ing the case here presented.  The contract of September 26th
having been made, nothing further appears to have been done
until the 2nd day of December, 1911, when a notice, spoken
of by the witnesses as a "Nomination," was sent by the
agent of the defendant to the plaintiffs.  That notice was in
the following terms:

"BALTIMORE, Dec. 2, 1911.
MESS. GILL & FISHER:                           City.
    DEAR SIR: We beg to name Steamer "Amana,"
expected to sail for Leith Dec. 27th for 2000 quarters
grain.   Engagement of Sept. 26, for 2000 quarters.
            Respectfully,
        DRESEL, RAUSCHENBERG & Co., AGENTS.
Contract No. 66.
    Per A. F. SIDEBOTHAM."

The exclusion of this notice when offered in evidence con-
stitutes one of the bills of exceptions.  Subject to all legal
exceptions as to admissibility, it was admitted that the
steamship Amana of the Furness Line sailed from Leith,
Scotland, on December 1st, 1911, and that she was expected
by the defendant to arrive at Baltimore in time to sail from
Baltimore on December 27th, 1911, for Leith, and was due
so to arrive, and that the vessel has not been heard of since
December 1st, 1911.  The theory of the plaintiffs is that the
agreement of September 26th was an absolute agreement for

the transportation of 2000 quarters of grain, and that being an absolute agreement, plain in its language, no evidence is admissible which might tend to vary the legal effect of it, or even to explain any of its terms. Reliance for this position is placed mainly upon the case of the *Baltimore Steam Packet Co.* v. *Patterson,* 101 Fed. 296, and 106 Fed. 736. In this case there was a contract not very dissimilar in form from the contract of September 26th, but the only evidence offered in that case in addition to the contract itself was evidence to the effect that the shipper failed at the specified time to produce for shipment the 1000 bales of cotton, and recovery in the form of damages was allowed at the instance of the owners of a ship belonging to the Johnstone Line and ready to sail at the time specified. In this case if there was nothing before the Court except the contract already quoted, and evidence to show that no steamer of the Furness Line had appeared to fulfill and carry out that contract, then the analogy would be complete. This leads to the consideration of the correctness of the rulings by which the notice of nomination of December 2nd was excluded from evidence. It is elementary law that where a contract is in writing, parol evidence is not admissible to add to, detract from or vary the terms of the agreement. This does not mean, however, that the parties may not, subsequently to entering into the contract, rescind it by mutual consent, enter into a new contract, or modify the existing one. This rule was distinctly laid down in the case of *Atwell* v. *Miller,* 11 Md. 348, where it was held competent to add to the terms of a bill of lading by proof of a parol supplementary agreement. See also *Birely* v. *Dodson,* 107 Md. 229. The agreement of September 26th would have been fully gratified by the tender at the time named of any seaworthy ship by the defendant corporation, and that without any notice whatever, and if no notice had been given it is perfectly clear that the plaintiff would have been entitled to recover under the agreement of September 26th. *Carver on Carriage by Sea,* 3rd Ed., sec. 227.

See also *Jacobs* v. *Credit Lyonnais,* 12 Q. B. D. (1884) 603. But as matter of fact in this case the defendant did on December 2nd name a particular ship to carry the grain in question.    The effect of this was to render more definite, in one particular at least, the terms of the original contract; and the assent to it on the part of the shipper amounted to a modification of the original contract by mutual consent at a time when it was perfectly competent for the parties so to do, and substitute a particular ship, in place of an open contract which would be gratified by the sending of any ship of that line.    The notice does not bear upon its face any statement of the acceptance of the designation by the shippers, although it was virtually conceded in the argument that such assent had been given.    In the state of this record, therefore, the rule is perfectly clear, that while the construction of a contract is always a matter to be passed upon by the Court the determination of what the contract was is a question to be found by the jury.    *Roberts* v. *Bonaparte,* 73 Md. 191; *Sullivan* v. *Boswell,* 122 Md. 539; 89 Atl. 940; *Meyer* v. *Frenkil,* 113 Md. 36.    It was therefore proper that the question of whether or not the notification of December 2nd was intended by the parties to, and did in fact amount to a modification of the original agreement should have been submitted to the jury.

The impossibility of the performance of the contract by the Amana is, as we understand the record, conceded, and thus is presented the question whether the impossibility of performance amounts to an excuse such as will relieve the parties to the contract from all liability for its non-performance.    The leading case with regard to this is the case of *Taylor* v. *Caldwell,* 3 Best & Smith, 826, and the rule there laid down has been followed in a number of cases both in this country and in England.    In the case of *Nickoll & Knight* v. *Ashton, Edridge & Co.,* L. R. 2 K. B. (1901) 126, a vessel had been chartered to load with cotton seed at Alexandria. While proceeding thither the vessel was stranded and in-

jured so that she was unable to fulfill her agreement within the specified time, and her owners were held to be excused. That decision was rendered by a divided Court, but the same principle precisely was applied in the case of *Howell* v. *Coupland*, L. R. 9 Q. B. 462; 1 Q. B. D. 258. In this country the leading case is that of the *Tornado*, 108 U. S. 342, and the ruling in this case is well summarized in 36 *Cyc.* 206, as follows:

> "Where a vessel before she breaks ground for a voyage is injured by fire so that the cost of her repair would exceed her value when repaired, and she is rendered unseaworthy and incapable of earning freight, a contract of affreightment for carrying cotton to a foreign port and providing for the payment of freight money on the delivery of the cotton at that port, is dissolved."

In this case on page 351, the Supreme Court of the United States adopting the language of *Taylor* v. *Caldwell, supra,* say:

> "Contracts whose performance depends on the continued existence of a given person or thing imply a condition that impossibility of performance arising from the perishing of the person or thing shall excuse the performance."

The general legal principles applicable to a case like the present have been so recently considered by this Court and so fully announced in the opinion prepared by JUDGE THOMAS, in *American Towing Co.* v. *Whiteley,* 117 Md. 660, 678, that a further discussion of them at this time seems unnecessary. It, therefore, follows, that there was error in the action of the Superior Court in sustaining the demurrers to the 3rd and 4th plea. and that error extended necessarily to the rulings on evidence set out in the 1st and 4th bills of exceptions, and to the rulings of the Court on the plaintiff's prayer and the defendant's 1st and 2nd prayers.

The second bill of exceptions was reserved to the refusal of the Court to permit a witness, who was a member of the plaintiff firm, to answer the following question: "If there had been no nomination in this instance, how could you have known when to have your grain ready for shipment?" It is difficult to see how this question was in any way material to the issue as made up, and no reversible error can be ascribed to the Court for its ruling with regard to this.

The third bill of exceptions, and the defendant's third prayer both related to an endeavor to show the custom of the parties over a series of years to have been identical with that pursued in the present case. Usage of the parties to a transaction is frequently shown, and yet it is entirely within their power to contract either without reference to such usage or directly to the contrary of what a usage has been; but the tender of proof in this case goes still further, in that the proffer is to show the usage and interpretation placed by the parties themselves upon contracts in every way substantially like that involved in the present case. Mere usage or custom can never be received to modify the express terms of a contract, and a departure from this well recognized rule would open too wide a door for the introduction of improper evidence. We, therefore, entirely concur with the Superior Court in its ruling upon the third bill of exceptions and the refusal of the defendant's third prayer.

For the errors already indicated, the judgment in this case must be reversed, and the case remanded for a new trial.

*Judgment reversed and case remanded, costs to be paid by the appellee.*