[S. F. No. 8884.   In Bank.—June 6, 1921.]

## H. HACKFELD & CO., LTD. (a Corporation), Appellant, v. WALTER M. CASTLE et al., Respondents.

[1] SALES—"F. O. B." CONTRACT—DUTY OF SECURING TRANSPORTATION—QUESTION OF INTENTION OF PARTIES.—Under a f. o. b. contract for the sale of goods, the question as to whether the seller or the buyer is to secure transportation is one as to the intention of the parties, as to what they contemplated, regardless of whether the shipment is to be by rail or by sea, and the expression "f. o. b." in and of itself throws no light upon the question, but merely makes it the duty of the seller to load at his own expense.

[2] ID.—SHIPMENT BY PARTICULAR ROUTE—MATERIAL PROVISION OF CONTRACT—DISCONTINUANCE—EXCUSE OF PERFORMANCE.—A provision in a f. o. b. contract for the sale of goods calling for shipment by a certain route was one material to the contract, so that the contract could not be performed according to its terms except by shipment by such route, and the continued existence of the route, in the absence of any warranty that it would continue in existence, was a condition of the contract within the rule that wherever a contract requires for its performance the existence of a specific thing, the fortuitous destruction of the thing excuses the promisor unless he has clearly assumed the risk of its continued existence.

[3] ID.—SHIPMENT BY ANOTHER ROUTE—OPTION OF BUYER—CONSTRUCTION.—A provision in a f. o. b. contract for the sale of goods calling for shipment by a particular route, that at the buyer's option the goods might go by another route in case the designated route was discontinued, means that the contract was conditional upon the designated route remaining open, but that in case it were discontinued, the buyer might, at his option, waive the condition if the goods could go forward by another route.

[4] ID.—SECURING OF TRANSPORTATION—DISCONTINUANCE OF ROUTE—DUTY OF BUYER EXCUSED.—Under a f. o. b. contract for the sale of goods calling for shipment by a particular route, the buyer was justified in refusing to accept the goods, where the route was discontinued, regardless of whether it was his duty under the contract to secure the transportation.

1.   Duty of furnishing vessels or cars under contract for delivery "free on board," notes, 2 Ann. Cas. 818; 9 Ann. Cas. 553; 6 L. R. A. (N. S.) 928; L. R. A. 1917A, 1163.

2.   Destruction of subject matter of contract as excuse for nonperformance, note, 1 Ann. Cas. 466.

[5] ID.—PART ACCEPTANCE OF SHIPMENT BY DIFFERENT ROUTE—SUB-
SEQUENT SHIPMENTS—CONTRACT REQUIREMENT NOT WAIVED.—Un-
der a f. o. b. contract for the sale of goods, calling for a shipment
by a particular route, the acceptance of part of the goods by a
different route was not, under the circumstances of the case, a
waiver of the requirement of the contract as to subsequent ship-
ments.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco. E. P. Shortall, Judge.
Affirmed.

The facts are stated in the opinion of the court.

Andros & Hengstler and Louis T. Hengstler for Appellant.

Walter Perry Johnson and Nathan H. Frank for Re-
spondents.

OLNEY, J.—The plaintiff, an exporting firm of the Ha-
waiian Islands, sold to the defendants, a jobbing firm of
San Francisco, the output of honey of a certain Hawaiian
brand, for the season of 1914. The output amounted to
1,946 cases, of which eight hundred were delivered and
paid for. The defendants refused to accept the remaining
1,146 cases, and the plaintiff sold them at public auction
for the account of the defendants for a figure less than
the contract price, and brought the present action for the
difference. Judgment went against the plaintiff, and it
appeals.

At the time the contract of sale was made, March, 1914,
a regular line of steamers was running between Honolulu
and the Isthmus of Tehuantepec, there connecting with the
railroad across the isthmus and by means of the railroad
with vessels on the Atlantic side sailing between the isthmus
and Atlantic ports. By means of this line, shipments could
be made in regular course from Honolulu direct to European
ports, including that of Hamburg. Such being the means
of shipment from Honolulu to Hamburg, the contract be-
tween the parties provided that the price was net f. o. b.
Honolulu, payable on sight draft with shipping documents
attached, and provided also: "Goods to be shipped direct
shipment from Honolulu via Tehuantepec to Hamburg (or
at our [buyers'] option, via Panama Canal, in case the

Tehuantepec route is discontinued)." Upon the provision just quoted the cause turns. Before the time arrived for the shipment of the honey, the Tehuantepec route was discontinued because of unsettled political conditions in Mexico, and was not reopened. The Panama Canal was not yet open and was not opened until the middle of August, 1914. In the meantime, the recent world war had broken out, the port of Hamburg had been blockaded, and shipment to that port by any route had become a practical impossibility. In this situation, and because of it, the defendants refused to accept the honey, and the final question in the case is, Were they justified in so doing?

[1] The question is largely discussed before us as if it were to be determined according as it was the duty of the seller or the duty of the buyers under the contract to secure the necessary transportation. The contention on behalf of the plaintiff is that under f. o. b. contracts it is the rule in case of shipments by sea as distinguished from shipments by rail that it is the duty of the buyer to secure the transportation and that since the defendants in this case failed to do so they are responsible. On behalf of the defendants, on the other hand, it is asserted that the prevailing American, as distinguished from the English, rule is that under an f. o. b. contract it is the business of the seller to secure transportation, and in support of their contention counsel cite a number of decisions by courts of this country so holding as to shipments by rail. We doubt if either of these contentions is strictly correct, that is, if it can be truly said either that there is one rule for shipments by sea and another for shipments by rail, or that there is one rule followed in America for the most part and another followed in Great Britain. The question is one as to the intention of the parties, as to what they contemplated. The expression f. o. b. in and of itself throws no light upon it. The expression merely makes it the duty of the seller to load at his own expense. But whether the means of conveyance on which the goods are to be loaded are to be furnished by him or by the buyer is not indicated by the requirement. It would seem that in the absence of any express provision on the point (and usually there is none), what the parties contemplated must be determined by what was reasonable under the particular circumstances

of each case. When the buyer is not at the point of shipment and when between that point and the point of destination there is a regular and customary method of transportation with fixed rates and uniform conditions, so that it is practically immaterial to the buyer whether he or the seller arrange for the transportation, and there is no difficulty and no substantial burden in arranging for it, the fact that the seller is on the ground and it is convenient for him to arrange for it, when it is not convenient for the buyer, would seem to make it reasonable that the seller should attend to the matter. This is generally the situation in the case of shipments by rail. It is, however, not the situation, as a rule, in the case of shipments by sea. For one thing, there is usually no uniformity of freight rates, so that the buyer, who, of course, must pay the freight under an f. o. b. contract, is immediately concerned with what arrangement may be made for transportation. On the other hand, the arrangement is a matter of indifference to the seller. Under these circumstances it would seem to be reasonable to conclude that the parties contemplated that since the buyer is the party interested, he should attend to arranging for the transportation either directly or by instructions to the seller. Of the decisions cited to us by counsel most of those in this country were concerned with shipments by rail, and most of those in England with shipments by sea, and the above is, we believe, the probable explanation of whatever differences may exist between them. But if this view be correct, it follows that where the conditions of transportation by sea are substantially the same as those of transportation by rail, as where the contract of sale contemplates transportation by a regular line of steamers with fixed rates and uniform conditions, and the seller is at the point of shipment and the buyer is not, it might well be concluded that the parties contemplated that the matter of arranging for transportation would be attended to by the seller. The present case closely approximates at least that situation. But we need not determine finally whether it was the duty of the seller or of the buyers in the case before us to secure the transportation. We are of the opinion that even accepting the view that it was the duty of the buyers, it yet does not follow that they were not justified in refusing to accept the goods when shipment by the prescribed route became impossible.

[2] That the contract called for shipment via Tehuantepec hardly admits of question. There is a suggestion by plaintiff's counsel that the provision we have quoted was in the nature merely of shipping instructions by the buyers to the seller and was not intended as truly a part of the contract between them. But the mere presence of the provision in the writing which constitutes the contract would alone indicate *prima facie* that the provision was a part of the contract itself, and when in addition to this we consider the circumstances under which the contract was made, there can be no doubt upon the point. Neither can there be any doubt upon the further point that the provision was one inserted for the benefit and protection of the buyers. It seems that prior to the making of the contract the plaintiff had given the defendants a firm option on the honey, and that while holding this option and before accepting it and closing the contract the defendants contracted with a Hamburg firm for a resale of the honey to it, the contract specifying that the honey should go forward via Tehuantepec. These facts were known to the plaintiff when the defendants closed the contract with it, and there is but one possible inference from them, and that is that the provision under consideration was inserted in the contract in order to insure to the defendants that the honey would be shipped to Hamburg via Tehuantepec, as their contract with the Hamburg firm required.

The provision calling for shipment via Tehuantepec was, then, one material to the contract, so that the contract could not be performed according to its terms except by shipment by that route. This means that that route was a necessary instrumentality for the performance of the contract. Its continued existence was, therefore, in the absence of any warranty by either party that it would continue in existence, a condition of the contract within the rule thus stated by Professor Williston (3 Williston on Contracts, sec. 1948):

"Not only where a specific thing is itself to be sold or transferred, but wherever a contract requires for its performance the existence of a specific thing, the fortuitous destruction of that thing, or such impairment of it as makes it unavailable, excuses the promisor unless he has clearly assumed the risk of its continued existence. A contract to manufacture goods in a particular factory is discharged by

the destruction of the factory (*Stewart* v. *Stone*, 127 N. Y. 500, [14 L. R. A. 215, 28 N. E. 595]) ; a contract to do work on a specific building is discharged by the destruction of that building (*Keeling* v. *Schastey*, 18 Cal. App. 764, [124 Pac. 445]) ; a contract to carry goods by a particular ship is discharged by the loss of the ship (*Furness etc. Co.* v. *Randall*, 124 Md. 101, [91 Atl. 797]), or by such an injury to it as prevents its use within the time permitted by the contract (*Nickoll* v. *Ashton*, [1901] 2 K. B. 126) ; and a contract to serve or to employ another on a particular ship is subject to the same defense (*The Dawn*, 2 Ware, 121). A contract to move a building is excused by its destruction (*Jones-Gray Const. Co.* v. *Stephens*, 167 Ky. 765, [181 S. W. 659]) ; a contract to furnish water from a spring by the failure of the spring (*Ward* v. *Vance*, 93 Pa. 499) ; a contract to drive logs down a stream by a fall in the water in the stream, owing to which performance becomes impossible (*Clarksville Land Co.* v. *Harriman*, 68 N. H. 374, [44 Atl. 527])."

A case substantially parallel to the present is that of *The Tornado*, 108 U. S. 342, [27 L. Ed. 747, 2 Sup. Ct. Rep. 746, see, also, Rose's U. S. Notes]. There the owners of certain cotton and the owners of a certain ship had contracted for the carriage of the cotton by the ship from New Orleans to Liverpool. Before the ship commenced her voyage she was injured by fire, so that she was rendered unseaworthy and incapable of earning freight unless repaired at a cost which would exceed her value when repaired. It was held that both parties to the contract for carriage were excused, the court saying (108 U. S. 351, [27 L. Ed. 747, 2 Sup. Ct. Rep. 752]) :

"In *Taylor* v. *Caldwell*, 3 Best & S. 826, it is laid down as a rule, that, 'in contracts in which the performance depends on the continued existence of a given person or thing, a condition is implied, that the impossibility of performance arising from the perishing of the person or thing shall excuse the performance.' The reason given for the rule is, that without 'any express stipulation that the destruction of the person or thing shall excuse the performance,' 'that excuse is by law implied, because from the nature of the contract, it is apparent that the parties contracted on the basis of the continued existence of the par-

ticular person or chattel.' The rule was there applied to
excuse the owner of a music-hall, which had been burned,
from fulfilling a contract to let the use of it. The prin-
ciple was extended further in *Appleby* v. *Myers*, L. R. 2
C. P. 651. There the plaintiffs contracted to erect certain
machinery on the defendant's premises at specific prices for
particular portions, and to keep it in repair for two years,
the price to be paid upon completion of the whole. After
some portions of the work had been finished, and others
were in the course of completion, the premises, with all the
machinery and materials thereon, were destroyed by an
accidental fire. It was held that both parties were excused
from the further performance of the contract, and that the
plaintiffs were not entitled to sue in respect of those por-
tions of the work which had been completed, whether the
materials used had become the property of the defendant
or not.'' (See, also, for other cases involving the same
principle and closely parallel to the present on the facts,
*Furness etc. Co.* v. *Randall*, 124 Md. 101, [91 Atl. 797];
*Scottish etc. Co.* v. *Souter*, [1917] 1 K. B. 222; *Horlock* v.
*Beal*, [1916] 1 App. Cas. 486; *Nickoll* v. *Ashton*, [1901] 2
K. B. 126; *Lovering* v. *Buck etc. Co.*, 54 Pa. St. 291.)

In the leading English case of *Taylor* v. *Caldwell*, men-
tioned in the quotation just made from *The Tornado*, Lord
Blackburn states the underlying principle as follows:

''There seems no doubt that where there is a positive con-
tract to do a thing, not in itself unlawful, the contractor
must perform it or pay damages for not doing it,. although
in consequence of unforeseen accidents, the performance of
his contract has become unexpectedly burdensome or even
impossible. The law is so laid down in 1 Roll. Abr. 450,
Condition (G), and in the note (2) to *Walton* v. *Water-
house*, 2 Wms. Saund. 421a. (6th ed.), and is recognized
as the general rule by all the judges in the much discussed
case of *Hall* v. *Wright*, El. B. & E. 746. But this rule is
only applicable when the contract is positive and absolute,
and not subject to any condition either express or implied;
and there are authorities which, as we think, establish the
principle that where, from the nature of the contract, it
appears that the parties must from the beginning have
known that it could not be fulfilled unless when the time
for the fulfillment of the contract arrived some particular

specified thing continued to exist, so that, when entering into the contract, they must have contemplated such continuing existence as the foundation of what was to be done; there, in the absence of any express or implied warranty that the thing shall exist, the contract is not to be construed as a positive contract, but as subject to an implied condition that the parties shall be excused in case, before breach, performance becomes impossible from the perishing of the thing without default of the contractor.''

This language is directly applicable to the present case. The parties here must from the beginning have known that the contract could not be fulfilled unless the Tehuantepec route continued to exist, so that when entering into the contract they must have contemplated its continuing existence as the foundation of what was to be done. There was no express or implied warranty by either party that it would continue to exist, and the contract is, therefore, to be construed as subject to an implied condition that the parties be excused in case, before breach, performance became impossible by reason of the prescribed route ceasing to exist.

[3] The only substantial difference between these cases and the present is that in them it did not appear that the parties contemplated, when the contract was made, the contingency which subsequently arose, namely, the loss of the instrumentality by which alone the contract could be performed, while in the present case it does appear that the parties did contemplate it. This appears from the provision that at the buyers' option the honey might go by Panama in case the Tehuantepec route were discontinued. But the effect of this difference is only to strengthen the implication that the contract was conditional upon the Tehuantepec route remaining open. It was only at the buyers' option that the honey could go forward otherwise than by Tehuantepec, even if that route were closed and performance thereby made impossible. The reasonable implication is that if the buyers did not choose to exercise this option (and they did not), the condition inserted for their benefit that the honey should go by Tehuantepec would operate and they would be excused because of noncompliance with it. Otherwise the option would be valueless.

In this connection we would note a contention made by plaintiff's counsel as to the construction of the option

provision. It is that the option given the buyers in case the Tehuantepec route was closed was one of choosing the Panama route in preference to any other; in other words, was merely an option between routes. The answer to this, however, is that the granting of such an option would amount to nothing. The plaintiff's fundamental contention is that the defendants were obligated to accept the honey, whether the Tehuantepec route was open or not. If this be true, the buyers necessarily would have the right, in case the Tehuantepec route were closed, to select any route they pleased, so that without any express grant of an option to that effect, they could select the Panama route. It must be taken that the express grant of an option meant something and was intended to do more than give the buyers a right they would plainly have without it. The reasonable construction of the whole provision would seem to be that the contract was conditional upon the Tehuantepec route remaining open, but that in case it were discontinued, the buyers might, at their option, waive the condition if the goods could go forward via Panama.

[4] It is no answer to the proposition that the contract required the honey to go via Tehuantepec, and that, therefore, the continued existence of that route was a condition of the contract, to say that it was the duty of the buyers to secure the transportation necessary according to the contract, and that they cannot rely upon their own failure to secure transportation as any reason why they should not carry out the contract. We may assume that it was the duty of the buyers to secure the transportation, but that duty, like their other obligations under the contract, was conditional upon the necessary instrumentality continuing in existence. If this be not so, the provision of the contract, plainly inserted for their benefit, that the honey go forward via Tehuantepec, means nothing. The provision that it should go forward is at once negatived as to the buyers by the fact that they are under an unconditional obligation to provide for its so going forward, so that whether the honey move by the prescribed route or not, they are responsible. In other words, such a construction of the contract would wholly frustrate the object for which unmistakably the provision under discussion was inserted— the protection of the buyers. Furthermore, the fact that

the provision was inserted for that purpose strongly supports the view that the parties contemplated that the seller would attend to the matter of transportation. It is rather difficult to see why the buyers should insist upon a provision that the honey be shipped via Tehuantepec if it were contemplated that they, themselves, should attend to the matter of transportation, so that whether the transportation arranged for was via Tehuantepec or some other route would be entirely in their own hands. But even if it does not appear that it was the seller who was to arrange for transportation, the facts that the contract required the goods to go via Tehuantepec unless at the buyers' option they went via Panama in case the Tehuantepec route were closed, and that this requirement was for the benefit of buyers, plainly indicate that the whole contract was conditional, so far at least as the buyers were concerned, upon its being possible to ship the honey by that route. As it turned out, this was not possible and the buyers were, therefore, justified in their refusal to accept the honey.

[5] There are some further points of minor character advanced on behalf of the plaintiff, but of these there is but one which either is not disposed of by what has already been said or is of such importance as to justify discussion. It is contended on behalf of the plaintiff that the parties themselves, by their dealings with respect to the eight hundred cases which were delivered and paid for, have construed the contract as one obligating the defendants unconditionally to accept the honey. These cases were shipped after the Tehuantepec route was closed, and were shipped to the defendants at San Francisco because they could not be shipped via Tehuantepec and were accepted by the defendants at San Francisco. But the trial court found, and its finding is not attacked, that the shipment was made only after the defendants had been notified that a portion of the honey was ready and had taken up with their Hamburg buyer the question of routing the honey via San Francisco and the Panama railroad, and had secured his consent to such routing, and that upon securing such consent the defendants notified the plaintiff to that effect and authorized the shipment via San Francisco on a through bill of lading to Hamburg. The shipment was not in fact made on a through bill of lading, but was consigned to the plaintiff

itself on a local bill of lading. But the trial court also found in this connection that the defendants did not accept the shipment and pay for it until they had been assured by the steamship company, which had a line from San Francisco to Panama as well as one from Honolulu to San Francisco, that it would take up the local bill of lading and issue in place of it a through bill from Honolulu to Hamburg via Panama. All of this occurred before the outbreak of the war and when shipment to Hamburg was possible. When the transaction is considered as an entirety, it is evident that there is nothing in it inconsistent with a position on the part of the defendants that they had the right to insist on shipment via Tehuantepec unless they chose in accordance with their option to have the shipment by Panama. There being nothing inconsistent with that position, the transaction cannot be taken as one whereby a contrary construction was put upon the contract. Much less can it be said to be a waiver by the defendants of any requirement of the contract as to subsequent shipments.

Judgment affirmed.

Shaw, J., Wilbur, J., Lennon, J., Angellotti, C. J., Sloane, J., and Lawlor, J., concurred.

Rehearing denied.

All the Justices concurred, except Shurtleff, J., who did not vote.