[L. A. No. 9558. Department Two.—October 30, 1928.]

LA CUMBRE GOLF AND COUNTRY CLUB (a Corporation), Appellant, v. SANTA BARBARA HOTEL COMPANY (a Corporation), Respondent.

John M. Curran and W. G. Griffith for Appellant.

Heaney, Price & Postel for Respondent.

LANGDON, J.—This is an appeal by the plaintiff from a judgment against it in an action to recover seven thousand two hundred dollars, the sum of installment payments alleged to be due under a contract entered into between the parties. In 1920, the contract, which forms the subject of this action, was entered into. It recited that the defendant was engaged in the general hotel business in the county of Santa Barbara, state of California, and desired to furnish to its guests the privileges of golfing and all of the privileges appurtenant to a country club; that the defendant was operating a hotel called The Ambassador in the city of Santa Barbara and had previously entered into a contract with the plaintiff Golf and Country Club for the extension of golfing

privileges to the guests of the Hotel Company and now desired to further promote the interests of its guests by increasing their means of transportation to and from the grounds of said golf club by purchasing and operating a bus between said hotel and clubhouse, but was unwilling to engage in such undertaking unless the privileges accorded its guests under the previous contract be extended to cover an additional period of time. Following the foregoing recital of conditions and purposes, it was agreed between the parties that for a period ending December 31, 1923, the Golf and Country Club should extend all the privileges of a membership in said club, except the privilege of voting or holding office, to any guest of the Hotel Company in said Ambassador Hotel. The contract continues: "Such privileges shall include the right on the part of said guest or guests of signing the usual cards of said club for green fees, supplies and all other purposes for which such cards of said club may be signed by a member of said club, and shall also include all of the other privileges of a member of said second party. . . . Said cards when so signed shall be a valid charge in favor of second party, against first party which in turn shall look to the guest of first party so signing said card or cards for reimbursement from those to whom it shall have issued cards of request for the privileges of said club."

The Hotel Company agreed to pay to the Golf and County Club three hundred dollars for each and every month of the term of the contract. It was further provided that in the event that the Golf and Country Club be compelled to discontinue its service to the guests of the first party by reason of lack of water or for any other cause, for a period of six months, the contract should terminate at the option of either party and in the event the discontinuance of service be for a shorter period than six months, the monthly compensation should abate for the period of discontinuance.

The trial court found that at the time the contract between the parties was entered into, it was the understanding of the parties that said contract covered and referred to the use and enjoyment of said golf course and golf club by the guests of said hotel; "that said contract was by the parties contemplated to continue during the period of time covered thereby for the use of said course and club by said guests, and said parties each contemplated the continued existence of

said hotel having guests using said golf course and that said golf club and golf course should be so patronized by the guests of said hotel and that thereby a mutual advantage would accrue to both parties—to said plaintiff in having guests using said club house, in receiving the monthly payments plus expenditures made by said hotel guests at said club house, green fees, etc., and that the defendant would receive an advantage in having facilities at its disposal in the nature of a golf course and golf club for its guests which would lead to a patronage of said hotel by parties seeking and enjoying such privileges.

"That it was contemplated and intended by said parties to said contract, at the time of the execution thereof and subsequently, that there should be guests at the said The Ambassador Hotel during the continuance of said contract; that it was contemplated and intended by said parties that said club house and golf course should at all times be open to the use and enjoyment of said guests of said hotel; that the said parties to said contract contemplated and intended at the time of the execution thereof and subsequently, that the said The Ambassador Hotel should continue to exist during the life of said contract and that the operation of said contract should be limited to the particular building known as The Ambassador Hotel; that it was contemplated and intended by said parties at the time of the execution of said contract and subsequently, as being of the essence of the said contract, and essential and vital and requisite and necessary to its performance by said defendant or plaintiff, that said building should continue to exist during the life of said contract.

"That at the date of the execution of said written agreement, and at all times thereafter, the only hotel owned by said defendant in the county of Santa Barbara, and in fact the only hotel owned at all by said defendant, was said The Ambassador Hotel; that the sole consideration received by said defendant upon the execution of said agreement, and in return for the payment of three hundred dollars a month, as set forth in said agreement, was the right and privilege extended by plaintiff to guests of said The Ambassador Hotel to use said golf club and golf course; that said plaintiff at the time of the execution of said contract knew that said defendant was the owner and operator of said The Am-

bassador Hotel, and that the rights and privileges provided for in said agreement and to be furnished and provided by said plaintiff were to be the use and enjoyment by the guests of said The Ambassador Hotel only and the rights and privileges so to be extended by plaintiff to said guests of The Ambassador Hotel were the sole consideration of said agreement on the part of defendant.

"That on or about the 13th day of April, 1921, without fault on the part of defendant, said The Ambassador Hotel was entirely destroyed by fire; that by reason of the destruction of said hotel by fire, defendant became unable to and has ever since continued to be unable to care for or accommodate hotel guests in said city of Santa Barbara in any manner, and that there were after said 13th day of April, 1921, no persons who might or could enjoy the rights and privileges set forth and provided for in said agreement; that said defendant did not thereafter ever build, construct, operate or maintain any hotel whatsoever, and subsequently thereto sold and disposed of its real property on which said hotel was located."

From the foregoing findings the court concluded that there was an implied condition in the contract between the parties that there should be guests in said The Ambassador Hotel and that if through no fault of the hotel company the hotel was destroyed and there were no longer guests, the hotel company should be excused from paying for guest privileges.

The appellant argues for a construction of the contract which would bind the defendant to pay the amount specified for club privileges for guests of a hotel, regardless of whether the hotel and guests were in existence or not. We think such a construction unwarranted and unreasonable and contrary to the intent of persons situated as were the plaintiff and defendant at the time this contract was entered into.

In the case of *Hackfeld & Co., Ltd.,* v. *Castle,* 186 Cal. 53 [198 Pac. 1041], it was said, quoting from Williston on Contracts, section 1948: "Not only where a specific thing is itself to be sold or transferred, but wherever a contract requires for its performance the existence of a specific thing, the fortuitous destruction of that thing, or such impairment of it as makes it unavailable, excuses the promisor unless he

has clearly assumed the risk of its continued existence. A contract to manufacture goods in a particular factory is discharged by the destruction of the factory. . . . '' In the case last cited appear other quotations from leading cases in support of the doctrine applied by the trial court in the instant case. It is unnecessary to set forth these statements again herein. The rule is concisely stated in 13 Corpus Juris, 642, section 717d, as follows: ''Where from the nature of the contract it is evident that the parties contracted on the basis of the continued existence of a person or thing, condition or state of things, to which it relates, the subsequent perishing of the person or thing, or cessation of the existence of the condition will excuse the performance, a condition to such effect being implied in spite of the fact that the promise may have been unqualified.''

The judgment appealed from is affirmed.

Richards, J., and Shenk, J., concurred.

Hearing in Bank denied.

All the Justices concurred.