[Civ. No. 12065.   First Dist., Div. Two.   July 15, 1942.]

J. B. SPRAGUE JOHNSON et al., Appellants, v. DAVID ATKINS et al., Respondents.

Brobeck, Phleger & Harrison for Appellants.

William A. Boekel and John D. Gallaher for Respondents.

NOURSE, P. J.—This is an appeal from a judgment, or order, confirming an award of arbitrators made after the trial court had denied appellants' opposition to the petition for arbitration.

The controversy arises out of a c. i. f. contract for the sale

of 500 tons of copra to the appellants for shipment to Puerto Colombia, or Barranquilla, Colombia, from San Francisco or Oakland. Two hundred tons were shipped and paid for when the buyer learned that no more copra could be shipped to that country, because permission for entry was either cancelled or denied by the Colombia authorities. The buyer paid to the seller incidental expenses incurred in handling the remaining 300 tons, and requested the seller to make other disposition of the remainder for their account. The seller refused and sent the controversy to arbitrators appointed under the rules of the San Francisco Foreign Commerce Association, which rules were made a part of the contract. The arbitrators ruled that it was the duty of the buyer to secure the permit and made their award in favor of the seller. The buyer first protested the submission to arbitration and then contested the award in suitable proceedings before the superior court.

On this appeal the appellants present three grounds for a reversal of the judgment, or order. (1) That the rules of the association do not cover a c. i. f. contract—that is a contract calling for prepayments of costs, insurance, and freight—but that they are limited to contracts covering sales made "Ex Dock, Ex Warehouse, f. o. b. Carrier, Port of Entry." (2) That, assuming the contract to be subject to arbitration, the arbitration clause fell when the object of the contract was frustrated. (3) That the award is void because it failed to comply with the rule requiring the arbitrators to fully set forth the facts of the case.

Because of the views herein expressed it is unnecessary to consider either the first or the third point raised. If, through frustration, the contract was at an end arbitration was not proper under any interpretation of the rules, and it would then become immaterial whether the award was in proper form.

We may assume without deciding that the contract was one that called for arbitration under the rules of the association, because we prefer to rest the judgment upon the firmer foundation that the trial court should have tried the issue whether the contract was terminated by frustration of the commercial venture contemplated by the parties in the execution of the contract, and hence the arbitrators had no jurisdiction to make the award. The doctrine of frustration is well stated in *Straus* v. *Kazemekas*, 100 Conn. 581 [124 Atl. 234, 238], where the court says: "Where from the nature of the contract and the surrounding circumstances the parties from

the beginning must have known that it could not be fulfilled unless when the time for fulfillment arrived, some particular thing or condition of things continued to exist so that they must be deemed, when entering into the contract, to have contemplated such continuing existence as the foundation of what was to be done; in the absence of any express or implied warranty that such thing or condition of things shall exist the contract is to be construed as subject to an implied condition that the parties shall be excused in case, before breach, performance becomes impossible or the purpose of the contract frustrated from such thing or condition ceasing to exist without default of either of the parties. 12 A. L. R. 1275.''

The doctrine has been given wider scope and application in the cases following the world war of 1914 where contracts for the sale of specific materials, and for the shipment on named vessels, or to specific ports, were made impossible of performance by war restrictions, embargoes, or seizure of the vessel. Numerous cases on the subject are to be found in the English reports; the earlier cases refusing to apply the doctrine, and the later uniformly accepting it as a settled rule of law, which not only declares a termination of the obligation, but a suspension of the arbitration clauses of the contract. The latest case called to our attention is *Hirji Mulji et al.* v. *Cheong Yue etc. Co.*, English Law Reports, Appeal cases (1926) p. 497. That case involved a dispute between the contracting parties whether the frustration of the object of a charter party by reason of the requisition of the chartered vessel in war time put an end to the jurisdiction of the arbitrator. The holding was that, since the contract came to an end by the frustration of the commercial venture, the jurisdiction of the arbitrator terminated with the contract and he therefore had no power to award damages for failure of performance. The case arose in the British court in Hongkong which approved an award of the arbitrator allowing damages for the breach, and rejecting the defense of frustration. The award was affirmed by the Supreme Court of Hongkong, two justices dissenting. On appeal to the privy council this judgment was reversed, all justices concurring. Defining the doctrine upon which the court rested its opinion it was said (p. 510) : ''Frustration, on the other hand, is explained in theory as a condition or term of the contract, implied by the law *ab initio*, in order to supply what the parties would have inserted had the matter occurred to them, on the basis of what is fair and reasonable, having regard to the mutual interests

concerned and of the main objects of the contract: see per Lord Watson in *Dahl* v. *Nelson, Donkin & Co.* (1) It is irrespective of the individuals concerned, their temperaments and failings, their interest and circumstances. It is really a device, by which the rules as to absolute contracts are reconciled with a special exception which justice demands.'' Many of the earlier cases to the contrary, upon which the judgment no doubt was based, are considered and their rule rejected in this later opinion. It is further said (p. 505): ''All these arguments, it will be seen, resolve themselves, on examination, into the fundamental inquiry, whether in law and fact frustration had been brought about before any dispute arose with regard to frustration or its cause or its consequences. The arbitration clause is but part of the contract and, unless it is couched in such terms as will except it out of the results, which follow from frustration, generally, it will come to an end too. This must be so, if the law is, that the legal effect of frustration is the immediate termination of the contract as to all matters and disputes which have not already arisen.

''Throughout the line of cases, now a long one, in which it has been held that certain events frustrate the commercial adventure contemplated by the parties when they made the contract, there runs an almost continuous series of expressions to the effect that such a frustration brings the contract to an end forthwith, without more and automatically. They are too numerous to be cited exhaustively, but there are few expressions to the contrary and none in recent cases.''

It was then said that a great many charter parties had been dealt with during the last few years on contracts held to have been frustrated by reason of requisitions during the war period; that *Bank Line* v. *Arthur Capel & Co.*, (1919 A. C. 435, settled the rule that the contract was terminated by these events. It was further said that (p. 509), ''whatever the consequences of the frustration may be upon the conduct of the parties, its legal effect does not depend on their intention or their opinions, or even knowledge, as to the event, which has brought this about, but on its occurrence in such circumstances as show it to be inconsistent with further prosecution of the adventure.''

The same principle is followed in our own cases. In Restatement of the Law of Contracts, section 288, it is said: ''Where the assumed possibility of a desired object or effect to be attained by either party to a contract forms the basis on which both parties enter into it, and this object or effect is or

surely will be frustrated, a promisor who is without fault in causing the frustration, and who is harmed thereby, is discharged from the duty of performing his promise unless a contrary intention appears.'' California cases in support of the text are *Hackfeld & Co.* v. *Castle*, 186 Cal. 53 [198 Pac. 1041], and *LaCumbre G. & C. Club* v. *Santa Barbara Hotel Co.*, 205 Cal. 422 [271 Pac. 476]. In the Hackfeld case the contract called for the shipment of honey ''from Honolulu via Tehuantepec to Hamburg.'' The Tehuantepec route was discontinued before the time for shipment because of unsettled political conditions in Mexico, and the war of 1914 had caused an embargo on shipments to Hamburg. The buyer refused to accept delivery of the portion of the goods not shipped and the seller sued for the loss. In affirming a judgment for defendant the Supreme Court held that the provisions for the manner of shipment were essential to the performance of the contract and that the contract must therefore be deemed subject to the implied condition that the parties be excused in case, before breach, performance became impossible by reason of the prescribed route ceasing to exist. In the LaCumbre case the golf club had a contract with the hotel company giving privileges of membership to guests of the hotel in consideration of specified monthly payments. The hotel burned down and the company refused to make the payments to the golf club. In an action by the latter the Supreme Court followed the rule of the Hackfeld case and cited with approval the statement in 13 C. J. 642 (see 17 C. J. S., § 464, p. 956): ''Where from the nature of the contract it is evident that the parties contracted on the basis of the continued existence of the person or thing, condition or state of things, to which it relates, the subsequent perishing of the person or thing, or cessation of existence of the condition, will excuse the performance, a condition to such effect being implied, in spite of the fact that the promise may have been unqualified.''

Following the same rule, but addressed particularly to appellants' contention that the frustration of the purpose of the contract left nothing to arbitrate under it, are *Hanes* v. *Coffee*, 212 Cal. 777 [300 Pac. 963]; *Stetson* v. *Orland Oil Syndicate*, 42 Cal. App. (2d) 139 [108 P. (2d) 463]; and *Friedlander* v. *Stanley Productions*, 24 Cal. App. (2d) 677 [76 P. (2d) 145]. The application of these cases and of the Hirji Mulji case (*supra*) is apparent. The rules of the foreign commerce association, which were expressly made a part of the contract,

provide: "Rule 513. ARBITRATION—Any dispute arising under contract shall immediately be submitted to arbitration before a committee of the Foreign Commerce Association of the San Francisco Chamber of Commerce under its Rules." In the Hirji Mulji case (*supra*) the court said: "The arbitration clause is but part of the contract and, unless it is couched in such terms as will except it out of the results, which follow from frustration, generally, it will come to an end too. This must be so, if the law is, that the legal effect of frustration is the immediate termination of the contract as to all matters and disputes which have not already arisen." It will be seen that here the arbitration clause contained no such exceptions. Here the arbitrators based their award upon the finding that "After full consideration of all points, the arbitrators were unanimously of the opinion that Seller had filled his part of the contract and was estopped from making shipment by Buyer's inability to secure the necessary permit from the Colombia authorities. It was clearly the duty of Buyer to furnish such permit. . . ." As a special defense to the petition the appellants herein pleaded that from the inception of the transaction all parties knew that the copra could not be shipped into Colombia without a permit issued under the authority of that government, that the obligation to secure such a permit rested upon the buyer, but that the contract obligated the seller to deliver the necessary shipping documents for transportation of the copra to one of two designated ports in Colombia, and all parties understood that it would be impossible to procure such documents without the permit. Other facts were pleaded in support of the issue that the commercial adventure was from its inception understood to be a purchase here for resale to a Colombian buyer and that a permit, or license, for shipment to a Colombian port was essential to the purposes of the adventure; that this purpose was thus frustrated by conditions beyond the control of the buyer. Evidence was tendered, and an offer was made to prove this special defense, and the trial court sustained objections to the offer and ordered the evidence stricken. This was error. The evidence was directed to the very meat of the controversy. If the facts alleged are true the contract was terminated and no arbitration was permissible.

The judgment is reversed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing was denied August 14, 1942.