Appellate Department, Superior Court, Los Angeles

[Civ. A. No. 5641.    May 18, 1944.]

20TH CENTURY LITES, INCORPORATED (a Corporation), Appellant, v. HERMAN GOODMAN, Respondent.

Harrison Weil, Stanley Phipps and Everett B. Laybourne for Appellant.

Sims & Wallbert and James H. Sims for Respondent.

KINCAID, J.—This appeal arises out of an action commenced by plaintiff to recover certain monthly payments claimed due under a written contract whereby plaintiff leased neon sign installations to defendant in consideration of agreed

payments to be made by defendant for the contractual period. The defendant, among other defenses, alleges that by reason of the governmental order of August 5, 1942, prohibiting the illumination of all outside neon or lighting equipment between the hours of sunset and sunrise, he has been prevented, without fault on his part, from using such installations during the nighttime, and that such use was the desired object and effect contemplated by the parties at the time of the execution of the contract.

The lease contract of September 3, 1941, is one wherein plaintiff retains the title to the neon signs and tubing which it installed and maintained on the exterior of defendant's "drive-in" restaurant. The court found from the evidence that the parties had each performed all terms and conditions of the contract to August 4, 1942; that on August 5, 1942, the Government of the United States, as an emergency war measure, ordered a cessation of all outside lighting, including neon illuminated signs, at all hours between sunset and sunrise, covering the district in which defendant's place of business is located; that said proclamation of cessation has, during all the time in question, remained in full force and effect, and that, because of this fact, the defendant has been prevented from illuminating such signs during such hours; that subsequent to August 5, 1942, defendant offered to surrender to plaintiff such contract, to terminate same, and to permit plaintiff to remove such signs, but plaintiff refused to accept the offer and thereafter, beginning September 1, 1942, defendant failed to pay the monthly rental payments in the contract set forth.

The trial court properly concluded and found that, by reason of such governmental proclamation, the desired object or effect that the parties to the contract intended to attain at the time it was entered into, was frustrated without the fault of either party on and after August 5, 1942, and that defendant was harmed thereby. It further found that on and after said date both parties to said contract were excused from any further performance of any one of the terms or conditions thereof, and that said contract thereupon terminated.

The legal principles which are here applicable are set forth in the case of *Johnson* v. *Atkins* (1942), 53 Cal. App.2d 430, 433 [127 P.2d 1027], wherein the court quotes with approval from Restatement of the Law of Contracts,

section 288, as follows: " 'Where the assumed possibility of a desired object or effect to be attained by either party to a contract forms the basis on which both parties enter into it, and this object or effect is or surely will be frustrated, a promisor who is without fault in causing the frustration, and who is· harmed thereby, is discharged from the duty of performing his promise unless a contrary intention appears.' " To the same general effect such decision further quotes (p. 434), from 13 Corpus. Juris 642: " 'Where from the nature of the contract it is evident that the parties contracted on the basis of the continued existence of the person or thing, condition or state of things, to which it relates, the subsequent perishing of the person or thing, or cessation of existence of the condition, will excuse the performance, a condition to such effect being implied, in spite of the fact that the promise may have been unqualified.' " These principles are apparently recognized by Civil Code, section 1511, subdivision 1. Among the California cases in support thereof are *Johnson* v. *Atkins* (*supra*) ; *H. Hackfeld & Co.* v. *Castle* (1921), 186 Cal. 53 [198 P. 1041] ; and *La Cumbre G. & Co. Club* v. *Santa Barbara Hotel Co.* (1928), 205 Cal. 422 [271 P. 476].

Plaintiff contends that the foregoing principles of law, which have been called the doctrine of commercial frustration, are inapplicable under the terms and conditions of the contract made by the parties herein; that the contractual provisions for block lettering of the signs, thus making them visible in the daytime when they are not illuminated, and the availability of the illumination of the sign during daylight as well as dark hours, demonstrate that there has been no destruction of the subject matter of the contract and that the desired object was not completely frustrated. It argues that the enforced termination of illumination of the signs during the night hours caused only a condition rendering the transaction less attractive and less profitable to defendant.

In considering the soundness of plaintiff's position, it is first necessary to examine the contract in order to ascertain the nature of the "desired object or effect to be attained" by the transaction which the agreement represents. ▮ The contract describes the thing leased to defendant as an "electrical advertising display." The defendant is required to use it at his place of business and not elsewhere. Ordinarily,

words of a contract are to be understood in their ordinary or popular sense. (Civ. Code, §1644.) Webster's New International Dictionary defines the noun "display" as "An opening or unfolding; exhibition; manifestation. Ostentatious show; exhibition for effect; parade." When qualified by the adjective "electrical" it becomes an electrical exhibition or electrical manifestation. In order to be an electrical display, it must use electricity, in which event it then becomes illuminated and is an "electrical advertising display." Unelectrified, it is merely a display. While illuminated, it would remain as a sign, still it would not be the "electrical advertising display" which the contract called for and which manifestly was the "desired object or effect to be attained."

The contract is silent as to what hours of the day or night the signs were to be illuminated, although it requires the use of the "electrical advertising display" for a period of thirty-six months. The absence from the contract of any provision fixing hours of the day or night during which the sign is to be illuminated does not create an uncertainty. The parol evidence was inadmissible for the purpose of interpreting any such claimed uncertainty, but it was properly admitted to show a state of facts to which the doctrine of commercial frustration was applicable. The cases do not hold that such facts must appear on the face of the contract, and the purpose of proving them is not to vary the terms of the contract itself, but to show that a state of facts has arisen which results in its termination. The evidence is admissible, not for the purpose of inserting in the contract a provision requiring the defendant to use the sign at night or forbidding him to use it at any other time, but only to show that its illumination at night was the desired object to be obtained by the parties, and that the possibility of such illumination formed the basis on which both parties entered into the contract.

The defendant testified that he had never at any time illuminated the signs in the daytime, and that at the time of his negotiations with plaintiff's representative for such signs defendant advised plaintiff that he was interested in a neon sign for nighttime illumination for his place of business, which he needed because he was "blocked off more or less on a side street." Plaintiff's agent then demonstrated a tube which he said was a much larger and brighter neon tube than the ordinary one, and that by installing it in the tower of the

building, it would give illumination at night from a great distance and would bring traffic into his place. Such a tube was ultimately installed as a part of the display.

It is apparent, therefore, that the "desired object or effect to be obtained" by defendant in his hiring of the "electrical advertising display" was the dual purpose of illuminating the exterior of his place of business at night, and the advertising thereof by means of the electrically illuminated signs during the nighttime, whereby passing trade would be notified of the presence of his place of business and would be attracted thereto. The merely incidental facts, that it remained physically possible to illuminate the display with electricity in the daytime and the signs were visible even though unlighted during the daylight hours, are of such inconsequential moment as to have no effect on the application of the rule.

When considered with the fact that all of such neon installations were on the exterior of the building, the required termination of the use of electricity in such signs, between the hours of sunset and sunrise, constituted a "cessation of existence of the condition" which was the "desired object or effect" and was the essential, primary and principal basis for which the signs were rented. The court's finding that such were the facts is substantially supported by the evidence.

We cannot agree with plaintiff's contention that the doctrine of commercial frustration may not be applied unless the defendant can show that the legal prohibition of the use to which the electrical equipment may be put was complete and that such use was entirely prevented for any purpose permitted under the contract of letting. The weight of authority in the United States is to the contrary, and is to the effect that such doctrine may be invoked whenever official governmental action prevents the hirer from using the property for the primary and principal purpose for which it was hired. In such event the contract of hiring is terminated even though other incidental uses might remain available for the thing hired.

Such governmental proclamation having, without the fault of either party to the contract, frustrated the "desired object or effect to be obtained," the doctrine of commercial frustration is applied through the means of implying a condition to exist in the contract whereby under such circumstances as are here found, the parties shall be excused from

any further performance of its terms. This rule is cited in *Johnson* v. *Atkins* (*supra*, p. 431), wherein an excerpt from the case of *Straus* v. *Kazemekas,* 100 Conn. 581 [124 A. 234, 238] is quoted as follows: " 'Where from the nature of the contract and the surrounding circumstances the parties from the beginning must have known that it could not be fullfilled unless when the time for fullfilment arrived, some particular thing or condition of things continued to exist so that they must be deemed, when entering into the contract, to have contemplated such continuing existence as the foundation of what was to be done; in the absence of any express or implied warranty that such thing or condition of things shall exist the contract is to be construed as subject to an implied condition that the parties shall be excused in case, before breach, performance becomes impossible or the purpose of the contract frustrated from such thing or condition ceasing to exist without default of either of the parties. 12 A.L.R. 1275.' ''

The lease contract herein contains no provisions with regard to the contingencies here considered. The right to illuminate the signs at night being the primary foundation essential to the desirability and usefulness of the contract, the termination of that right under the conditions here found results in a situation wherein the contract must be deemed subject to the implied condition that the parties had in mind, at the inception of the contract, that such primary foundation should be continuing in existence. Such being the case the trial court properly held that from and after August 5, 1942, the contract was terminated and both parties thereto were excused from further performance.

█ Plaintiff argues that, even conceding the facts above referred to as being true, the doctrine of commercial frustration cannot be invoked in this case, because of the fact that it has been put to an expense in manufacturing and installing the signs; that the termination of the contract on such grounds would violate the principles of equity. It relies strongly on the case of *San Joaquin L. & P. Corp.* v. *Costaloupes* (1929), 96 Cal.App. 322 [274 P. 84], in support of this contention. The latter case may be distinguished from the one here under consideration, as the court there held the contract to be one to deliver electrical energy to a certain described piece of land irrespective of its use. Although a fire had destroyed the factory wherein it had been contem-

plated that the electricity would be used, the court said (p. 327) : "All that appears here is that by reason of the premises the defendants could not use any more power or light in these particular buildings, but if at any time they chose to rebuild or make other use or application of the light and power they could have enforced their right of delivery of electrical energy." This is a vastly different situation than is presented by the contract and the facts of our case. Here, the plaintiff agreed to furnish an "electrical advertising display" which contemplated its being continuously operatable by electrified illumination at night. Furthermore, the defendant was not in the position of the user of electricity in the cited case, in that he could not relieve his situation by any voluntary act of his own, such as rebuilding his factory or making other use of the hired product. The facts herein are such as to prohibit the application of this exception to the general rule.

The defendant, by way of petition for rehearing, for the first time advanced the proposition that, because of the governmental order of November 1, 1943, abolishing the dim-out requirements, the effect of such dim-out regulation was to merely suspend, rather than terminate, the contract during the approximately fourteen months' existence of such regulation. Rehearing was granted, and this proposition was argued and considered.

Such is not the rule in cases where the doctrine of commercial frustration applies. On the application of such doctrine, the promisor "is *discharged* from the duty of performing his promise . . ." (*Johnson* v. *Atkins, supra,* p. 434.) (Italics added.) On page 433, we find, ". . . such a frustration brings the contract to an end forthwith, without more and automatically."

This rule has been recognized by the United States Supreme Court in the case of *Allanwilde Transport Corp.* v. *Vacuum Oil Co.* (1918), 248 U.S. 377 ['39 S.Ct. 147, 63 L.Ed. 312], where it was urged that the government's embargo on ships leaving American ports during a part of World War I, because of the enemy submarine menace, constituted but a temporary impediment, and therefore did not terminate the contract. In holding to the contrary, the court said: "The duration was of indefinite extent. Necessarily, the embargo would be continued as long as the cause of its im-

position,— that is, the submarine menace,—and that, as far as then could be inferred, would be the duration of the war, of which there could be no estimate or reliable speculation. The condition was, therefore, so far permanent as naturally and justifiably to determine business judgment and action depending upon it.''

The cases where the doctrine of commercial frustration, with its immediate termination of the obligations of the promisor applies, are to be distinguished from that type of case wherein such doctrine is inapplicable and the governmental embargo or regulation is not a permanent prohibition but is temporary only. The case of *United States Trading Corp.* v. *Newmark G. Co.* (1922), 56 Cal.App. 176, 186 [205 P. 29], is of the latter class, and does not conflict with the rule heretofore enunciated.

The judgment is affirmed, respondent to recover his costs of appeal.

Shaw, J., and Fox, J., concurred.