## PRIMOS CHEMICAL CO. v. FULTON STEEL CORPORATION.

### In re MILWAUKEE ELECTRIC CRANE & MFG. CO.

(District Court, N. D. New York. August 9, 1920.)

1. Contracts ⬅213(1)—Provision against damage for delay does not extend time for completing contract.

Where a contract required the delivery of an electric crane within 75 days, a provision exempting manufacturer from liability for damage caused by delay beyond its control does not extend the term of contract, so as to authorize manufacturer to recover the contract price from buyers after delivery was delayed by prior war orders.

2. Contracts ⬅326—Where loss is caused by fault of neither, the defendant must prevail.

Where neither party was to blame for delay resulting in the loss in controversy, defendant is in the better right, and must prevail.

In Equity. Suit by the Primos Chemical Company against the Fulton Steel Corporation. Report of special master, denying a claim of the Milwaukee Electric Crane & Manufacturing Company against the receivers confirmed.

See, also, 266 Fed. 937.

Joseph A. Corr, of New York City, for claimant.

Wm. A. Mackenzie and Chas. E. Spencer, both of Syracuse, N. Y., for receivers.

RAY, District Judge. The special master has found the facts as follows:

"First. That on or about July 20, 1918, claimant and Fulton Steel Corporation made and entered into the written contract, Exhibit 3 herein, whereby claimant agreed to furnish and Fulton Steel Corporation to take an electric crane: that the agreed sum to be paid by said Fulton Steel Corporation to said claimant for said crane was $12,600, 50 per cent. of which was to become due and payable upon receipt of invoice and bill of lading by Fulton Steel Corporation, and the balance in cash 60 days from the day of shipment of said crane to Fulton Steel Corporation; that said contract further provided that shipment of said crane by claimant should be not later than 75 days after receipt by claimant of complete data and O. K.'ed clearances; that said contract further provided that claimant would use every reasonable means to make shipment within the time specified, but assume no liability for loss or damage arising from nonfulfillment of said contract by reason of fires, strikes, delays in transportation, or any cause unavoidable or beyond its control.

"Second. That between the dates of July 20, 1918, and August 12, 1918, the parties to said contract mutually agreed and did modify said contract, by changing certain of the specifications for said crane at agreed further compensation to claimant of $850, but not otherwise modifying the terms of said contract.

"Third. That final and O. K.'ed clearances for said crane in accordance with said amended contract were mailed to claimant by Fulton Steel Corporation on or about the 18th day of August, 1918, and were received by claimant on the 19th day of August, 1918.

"Fourth. That on the 19th day of August, 1918, claimant received from Fulton Steel Corporation a priority certificate from the War Industries Board of the United States, No. P90820, permitting and authorizing claimant to manufacture and deliver said crane under class A–6; that said certificate is Exhibit 17 herein; that on or about July 20, 1918, claimant contracted with the American Bridge Company for said American Bridge Company to manufacture for claimant a portion of said crane, to wit, the girder or bridge thereon, with certain appurtenances thereto, and sent to American Bridge Company certain drawings and specifications therefor in accordance with the original specifications of claimant's original contract with Fulton Steel Corporation.

"Fifth. That said American Bridge Company did not deliver said girder and its fittings to claimant until December 11, 1918.

"Sixth. That subsequent to July 20, 1918, and prior to the date when said girder was contracted to be delivered to Fulton Steel Corporation, priority orders from the War Board of the United States government were received by claimant for other material and machines in process of manufacture by claimant, which priority certificates were of a higher classification than the priority certificate for the crane to be manufactured by claimant for Fulton Steel Corporation.

"Seventh. That subsequent to July 20, 1918, and before the time provided for the delivery of said crane to said Fulton Steel Corporation, certain persons representing themselves to be officials of the United States government visited the plant of claimant, and demanded and ordered that claimant proceed to manufacture and complete certain other cranes then in process of manufacture by claimant, before completing the crane to be manufactured and delivered by claimant to Fulton Steel Corporation.

"Eighth. That on or about December 19, 1918, at a time when claimant was in default in the delivery and manufacture of said crane pursuant to its contract with Fulton Steel Corporation, said Fulton Steel Corporation, through its receivers, duly elected to rescind said contract, and gave due notice of such rescission to claimant.

"Ninth. That claimant did not manufacture and complete said crane until on or about December 24, 1918.

"Tenth. That prior to July 20, 1918, the Fulton Steel Corporation contemplated and had prepared, through the T. W. Price Engineering Company, Incorporated, a general scheme and plan for the extension of its plant.

"Eleventh. That there was comprehended in said scheme and within the scope of said extension a steel building; that there was further comprehended in said scheme and within the scope of the extension an electric crane of a 10-ton capacity.

"Twelfth. That said electric crane was to be installed within and operated in said steel building; that on the 15th day of August, 1918, said Fulton Steel Corporation entered into a contract with Levering & Garrigues Company for the construction and erection of said steel building at the plant of Fulton Steel Corporation. Fulton, N. Y.

"Thirteenth. That the electric crane for which said Fulton Steel Corporation contracted with claimant herein was the crane which Fulton Steel Corporation contemplated installing in said steel building.

"Fourteenth. That said steel building referred to herein had not been completed or erected on the 22d day of December, 1918, and has never been completed and erected at the plant of the Fulton Steel Corporation."

## And as conclusions of law the special master held:

"First. That claimant, at and prior to December 19, 1918, had breached the contract for said electric crane, by failing to complete and deliver said crane to Fulton Steel Corporation within the time specified in the contract, Exhibit 3, as thereafter modified.

"Second. That while claimant was in default, as set forth in the first finding of fact herein, Fulton Steel Corporation duly elected to and did rescind said contract, and gave due, timely, and sufficient notice of such rescission to claimant.

"Third. That claimant has failed to prove any just or legal claim or demand in any amount against Fulton Steel Corporation, which is the subject-matter of Exhibit 3 as modified.

"Fourth. That the claim of claimant, Milwaukee Electric Crane & Manufacturing Company, herein, should be and is hereby wholly disallowed."

## The special master's memorandum of opinion based thereon is as follows:

"The written contract between claimant and Fulton Steel Corporation is dated July 20, 1918. It provides, in substance, for the manufacture of an electric crane by claimant for Fulton Steel Corporation, with shipment to be made in from 60 to 75 days from receipt of complete data and O. K.'ed clearances from Fulton Steel Corporation. The contract also contains the following clause: 'We will use all reasonable means to make shipment within the time specified, but assume no liability for loss or damage arising from non-fulfillment of contract by reason of fires, strikes, delays in transportation, or any cause unavoidable or beyond our control.' Certain modifications in the specifications for the crane were thereafter mutually agreed upon, but final complete specifications and O. K'ed clearances were mailed to claimant by Fulton Steel Corporation August 16, 1918, and received by it August 19, 1918.

"Upon signing the original contract, claimant had subcontracted with American Bridge Company for the girder or bridge which formed an essential portion of said crane. Correspondence ensued between American Bridge Company, claimant, and Fulton Steel Corporation, through its engineers, as to modifying the specifications for said girder. As a result of this correspondence specifications for this girder were changed, and it was the final modifications of the specifications which were received by claimant on August 19th. August 21, 1918, claimant sent a new bill of materials to the American Bridge Company; but it appears from the evidence that detailed drawings for the girder as modified were not sent by claimant to American Bridge Company for some time afterwards, and the American Bridge Company protested against the delay. Fulton Steel Corporation had procured and sent to claimant a priority order from the War Board of the United States government permitting and authorizing the construction of the crane under classification A-6. Claimant procured a priority certificate from the United States government per-

mitting American Bridge Company to construct the girder under classification A-5.

"The American Bridge Company failed to complete this girder, so that it was not received by claimant until on or about December 11th, and claimant did not finish the crane until about the 23d or 24th of December, 1918. In the meantime Fulton Steel Corporation had gone into the hands of receivers, and on the 19th day of December, 1918, the receivers wrote the claimant, canceling the contract. There is nothing which shows that Fulton Steel Corporation or the receivers extended the time for the completion of the contract. The letter signed 'S. S. Stevens,' of October 29, 1918, does not appear to have been authorized by Fulton Steel Corporation or by the receivers. Even assuming that it was so authorized, it was merely an inquiry as of that date, asking claimant how soon the crane could be completed. Claimant apparently did not reply to this letter, and therefore did not accept the proposition therein made.

"Subsequent to the time of entering into this contract there is some evidence that claimant had work on its hands covered by priority certificates of a higher classification than that which governed the crane in question, and there is some evidence that certain government officials from the Watervliet Arsenal had visited claimant's plant and demanded that certain work being done by it for the government be pushed. It does not appear, however, that any of this other work for the government done by the claimant covered by priority certificates interfered with its part of completing the crane. Concededly the delay was occasioned by the failure of American Bridge Company to deliver the girder. Whether the American Bridge Company was delayed in furnishing the girder by orders from the Government does not appear to me to be at all material.

[1] "It will be observed that the clause in the contract, 'We will use all reasonable means to make shipment within the time specified,' etc., provides against damages to the purchaser by reason of delay for the causes therein specified. It does not assume to extend the time of the completion of the contract because of any delays occasioned from such causes. But, even if it be assumed that claimant has established that it was prevented from completing the crane within the time specified in the contract by reason of the direct interposition of vis major, still I do not think it can recover herein. It is true that proof of such fact would protect claimant in an action brought against it by Fulton Steel Corporation for damages due to delay (Moore & Tierney v. Roxford Knitting Co. [D. C.] 250 Fed. 278); but here the vendee attempts to use this principle, not as a shield, but as a sword, with which to compel defendant to accept or pay for the crane. I know of no case which goes so far, nor has one been cited to me. In the absence of precedent, I am at a loss to discover on what theory defendant can be cast in damages.

"Both parties contracted with knowledge of war conditions and of section 120 of the National Defence Act (Comp. St. §§ 3115f-3115h). Moore & Tierney v. Roxford Knitting Co., supra. Defendant, it is true, entered into the contract, knowing that priority orders to claimant might render it impossible for claimant to deliver the crane on time, and it knew, or was presumed to know, that in such event it could recover no damages for nondelivery. But this, I think, is as far as the implication goes. I can discover no legal or equitable principle which justifies the assumption that, should delay ensue which would prevent the execution of the contract within the time limited, defendants by implication agreed to extend the time for delivery. Rather I think it must be held that claimant, knowing the conditions, deliberately took its chances, and, despite the risk it knew it ran, entered into a contract of which time was of the essence.

[2] "If it be argued that it is inequitable to compel claimant to bear this loss, occasioned by the demands of the United States government, and not by any fault of its own, the answer is that it would be equally inequitable to compel Fulton Steel Corporation to pay for a crane which was not delivered to it within the time for which it contracted, and which would have been of no use to it if it had taken it when it was ready for delivery. There seems to be

no reason in equity or in law why Fulton Steel Corporation should be required to bear the loss rather than claimant. Assuming that neither was to blame, the principle that, as between plaintiff and defendant, defendant is in the better right, must prevail.

"I accordingly find and report that claimant has failed to prove a valid claim against Fulton Steel Corporation, and that its claim should be wholly disallowed."

I have arrived at the conclusion that the above findings of fact made by the special master should be approved and confirmed, and that his conclusions as above stated should also be approved and affirmed, and the objections to the confirmation overruled.

There will be an order accordingly.