## Commonwealth *v.* Neff et al.

*Bond—Suit on—Defenses—Distribution—Payment into court—Practice, C. P.—Principal and surety.*

1. In a suit upon a bond, defendant cannot defeat the obligee's right to judgment for the full amount thereof, by alleging that, even if the whole sum is due, other parties may be interested in its distribution.

2. In such cases, the obligor's remedy is by petition for leave to pay the amount into court, for distribution among those entitled thereto.

*Affidavit of defense—Practice, C. P.—General allegations.*

3. General allegations in an affidavit of defense will not avail to defeat a summary judgment.

*Contract — Performance — Unforeseen contingencies — Impossibility of performance—Road-making—Affidavit of defense—Averments.*

4. Contingencies not provided against in a written contract, usually will not excuse performance thereof.

5. The fact that a contract has become more difficult and expensive of performance than was anticipated at the time it was executed, is no defense to a suit for the breach thereof.

6. If it is intended to assert the contract subsequently became impossible of performance, this should be distinctly set forth, with reference to the particular facts relied upon to show it; an asser-

tion thereof, without a clear and detailed averment of such facts, will be ineffective.

Argued May 23, 1921.    Appeal, No. 12, May T., 1921, by defendant, the Globe Indemnity Co., from order of C. P. Dauphin Co., Commonwealth Docket, 1920, No. 47, making absolute rule for judgment for want of sufficient affidavit of defense, in case of Commonwealth v. Oscar A. Neff et al., trading as Neff, Horn & Co., and the Globe Indemnity Co.   Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.   Affirmed.

Assumpsit on bond.

Rule for judgment for want of sufficient affidavit of defense.   Before HARGEST, P. J.

The opinion of the Supreme Court states the case.

Rule absolute.   The Globe Indemnity Co. appealed.

*Error assigned* was above order, quoting it.

*Owen J. Roberts,* for appellant.

*Robert S. Gawthrop,* First Deputy Attorney General, for appellee.

OPINION BY MR. JUSTICE SIMPSON, July 1, 1921:

This is an appeal from a judgment for want of a sufficient affidavit of defense, in a suit upon a bond conditioned for the faithful performance of a contract for constructing one of the State's highways, and, also, for the payment of "all and every sum or sums of money due [those furnishing] labor and materials for which the contractor is liable." The affidavit of defense admits the latter did not complete his contract, and that the Commonwealth's loss exceeds the amount of the bond; but, in avoidance of the right to recover, makes certain statements, which, it is claimed, would justify a jury in find-

ing that the actions of the United States Government, growing out of our entrance into the World War, rendered performance impossible, whereby the contract was avoided; and also avers that there are debts due by the contractor for labor and materials furnished by others, not parties to the suit, which the surety, the only appellant, is obligated to pay, under the condition of the bond, yet the Commonwealth seeks to recover its full amount, for her own use, upon a statement averring loss to herself only. The court below entered judgment for the full amount of the bond, with interest.

So far as regards the latter of the foregoing objections, appellant's only concern is to be protected against liability to pay more than the amount of the bond; and, as to this, it may secure itself by a petition in the court below, after notice to all known claimants upon the fund (and with an averment that there may be others, if it is believed there are), for leave to pay the amount due into court, for distribution among those entitled thereto.

In considering the alleged impossibility of performance, it is not necessary to differentiate the interesting cases found in the opinion of the court below, and in the paper-books of the respective parties, for it is conceded that difficulty of performance is not a valid excuse, and we are of opinion the affidavits of defense, fairly interpreted, asserts nothing beyond this, whether impossibility of performance is construed to mean absolute impossibility, or "commercial impracticability," as averred in some of the cases cited.

After eliminating all statements in the affidavit of defense, which relate to the opinion of the surety and its advisers, that a defense exists, because a contingency arose which was not contemplated by the parties at the time the contract was made, and that the contractor was entitled to an extension of time and an advance of price, because of this contingency (the contract being silent on the point and there being no allegation of its omission by fraud, accident or mistake, or any other averment made

therein, sufficient in law, if proved, to relieve the defendant from liability), the averments alleged to show impossibility of performance, are the following: "In the early spring of 1917, at about the time it became practicable to resume road work, the United States assumed the control of transportation, labor and materials, and immediately thereafter the said contractors were prevented, by United States embargoes, and by various other federal measures, which are matters of history and of which the court has knowledge, from obtaining materials, as well as from obtaining the labor essential to the progress of the said work. That the said interference of the United States with the production and transportation of materials, as well as the drafting of workmen into the military service, or forcing them into industries considered as "essential" by the War Department (which industries did not include road work), under threat of being forced into the military service, interfered with said contractors in the construction of said highway, and finally, during the said season of 1917, substantially stopped all progress thereon......Moreover such labor and materials as said contractors had been able to secure were obtained only irregularly and at practically prohibitive prices, being at about double the prices prevailing at the time said contract was made, and much of the cost of assembled labor was wasted in the vain waiting for materials. That,......owing to the continuance of the causes aforesaid, the procuring of both labor and materials became more difficult and impracticable, particularly owing to the continued drafting of men into the military service of the United States, and their being forced into particular industries other than road work, under threat of being inducted into the military service as aforesaid......[That when finally the] War Department requested the said Highway Department to have the said highway completed,......it was impossible for said contractors to resume the said work, not only because of the conditions which the United States Govern-

ment had produced as aforesaid, but by the prices which had been caused by the said conditions, and, moreover, said contractors had exhausted all their means in the efforts they had made and the excessive prices they had been compelled to pay for such labor and materials as they had been able to obtain in their said efforts to carry on the said work."

It will be noticed there is no averment as to the kind of materials the contractor needed, which required transportation, nor at what point or points they must be obtained; nor, while it is averred "the United States assumed the control of transportation, labor and materials," is it anywhere stated that it took over any of the class of materials needed by the contractor, or refused to convey, by the lines of "transportation" taken over by it, such thereof as would require transportation in that way, if any there were, or that said materials could not have been conveyed by other means, as for instance, by boat or autotruck, available to the contractor and commonly employed for this purpose. If there were "United States embargoes and various other federal measures, which are matters of history," which did more than render difficult the obtaining of labor and materials of the kind needed in road construction, "the court has [no] knowledge" thereof, and they should have been definitely stated. It is true, as the affidavit avers, road work was not one of the "industries considered as 'essential' by the War Department," but many industries, not essential, were carried on during the period under consideration, and much road work was done at that time. The court knows that men were drafted into the military service, and, perhaps, could take judicial notice of the fact that many others entered into employment deemed "essential."—probably more for patriotic reasons than from any other cause,—but this judicial notice, if it extends as far as the affidavit suggests, embraces also the other matters above stated, and renders it uncertain and evasive.

Reading it as a whole, it is certainly not clear that anything further was meant than that the "procuring of labor and materials became more difficult and impracticable" as the war progressed, except "at practically prohibitive prices, being at about double the prices [and later beyond this] prevailing at the time said contract was made." If more was intended to be asserted, it should have been explicitly averred with reference to the particular things required to be obtained for the performance of this contract, so as to make certain (as all effective affidavits of defense must do), that the contract could not be performed,—not that it merely became difficult and expensive of performance.

The judgment of the court below is affirmed.