[Civ. No. 13985. Second Dist., Div. Two. Apr. 15, 1943.]

LEON B. BROWN et al., as Trustees, etc., Respondents, v. Y. OSHIRO, Appellant.

Ray L. Smith for Appellant.

A. L. Wirin, Amicus Curiae on behalf of Appellant.

Robert N. Gold and Leon B. Brown for Respondents.

WOOD (W. J.), J.—Plaintiffs by a written instrument leased to defendant, a Japanese, part of the premises located at the northeast corner of First Street and Los Angeles Street in the city of Los Angeles for the period beginning February 1, 1940, and ending January 31, 1944, at a monthly rental of $175. In this action plaintiffs pray that a judgment be entered declaring that the compulsory evacuation of defendant from the city of Los Angeles will not affect the rights and duties of the parties under the lease. Defendant has appealed from a judgment granting relief to plaintiffs as prayed.

The record before us consists of the complaint, the answer and the findings and judgment. The findings recite that the court had examined the pleadings and "written stipulations" but no stipulations are in the record. Nor does it affirmatively appear in the record whether any evidence was received by the court. In the complaint it is alleged that defendant is a person of Japanese ancestry and that on May 3, 1942, an order was issued by the officer in command of the army of the United States on the Pacific coast whereby all persons of Japanese ancestry on and after May 9, 1942, were to be excluded from that portion of the city of Los Angeles in which the demised premises are located. It is further alleged that plaintiffs had sent to defendant a letter, a copy of which is attached to the complaint, by which they waived any requirement in the lease that defendant personally occupy the demised premises and by which they consented to any assignment or sub-lease of the premises which defendant would care to make. It appears from a copy of the lease which is attached to the complaint that plaintiffs had leased to defendant all of the second floor of the building at the corner referred to, one of the entrances being on First Street and the

other entrance being on Los Angeles Street. It is provided in the lease that the lessee shall personally occupy the demised premises. In paragraph XI of the lease it is provided that "the lessee shall use the premises for conducting a hotel and renting office space, and for no other purpose, except upon the written consent of the lessors."

Defendant filed an answer in which he alleges that he had been ordered by competent authorities to leave Los Angeles and its vicinity, that he had no alternative but to comply with the order and that, as a consequence, it was impossible for him to comply with the terms and conditions of the lease. Defendant prays that a judgment be entered declaring that his obligations under the lease were terminated by the evacuation order.

The findings of the trial court follow the allegations of the complaint. The court also found that during the period commencing February 1, 1940, and ending May 11, 1942, defendant conducted a hotel business on the leased property, but that during this period he "did not reside in or upon the demised premises, but employed various persons to reside on said premises and manage the hotel business conducted therein. Each day during said period the defendant visited the demised premises for the purpose of supervising and assisting the resident manager in his work." Under the heading "Conclusions of Law" the court concluded that the evacuation order did not make it impossible for defendant to perform his obligations as lessee under the lease and that the order did not effect a discharge of defendant's obligations under the lease.

A brief has been filed on behalf of the Japanese-American Citizens League as amicus curiae. It is set forth in this brief that the Japanese-American Citizens League is a national organization, organized in 1920 and incorporated in 1937; that it represents approximately 20,000 American citizens of Japanese ancestry; that it is maintained to protect their interests; that many members of the league are in a position similar to that of defendant; and that they have other contractual obligations which because of the evacuation order are either impossible of fulfillment or can be fulfilled only as the result of "unconscionable hardship." It is contended on behalf of the league that the record before the court does not disclose sufficient facts to enable the court to determine the intention of the parties to the lease, the ability of the

lessee to comply with the terms of the lease, or the possibility that the property can be used for the purpose for which it was leased. It is suggested that the judgment should be reversed and a new trial permitted in order that evidence of all the pertinent facts necessary to a fair and accurate determination of the issues may be before the court.

There is much discussion in the briefs of the parties concerning matters which are not covered by the record. On behalf of defendant it is asserted that the location in question is in the *center* of that area which prior to the evacuation order against all persons of Japanese ancestry was frequently designated as "Little Tokio;" and that not only was defendant excluded from Los Angeles but also "the very persons who were tenants of the hotel were also, by the same government decree ordered away;" and that "over night 'Little Tokio' became a ghost town." Appellants point out that there is no evidence in the record to support these claims and assert that, "had such allegations been pleaded or any evidence been offered in support thereof, it could have been established by competent evidence that the demised premises are actually on the *outskirts* of the Japanese district, and that many, perhaps a majority, of the inhabitants of the hotel were white persons unaffected by the exclusion orders."

■ The rule which should be applied to the present action is stated in Restatement of the Law of Contracts, section 288: "Where the assumed possibility of a desired object or effect to be attained by either party to a contract forms the basis on which both parties enter into it, and this object or effect is or surely will be frustrated, a promisor who is without fault in causing the frustration, and who is harmed thereby, is discharged from the duty of performing his promise unless a contrary intention appears." This rule was followed in *Johnson* v. *Atkins,* 53 Cal.App.2d 430 [127 P.2d 1027], where it was held that a contract for the sale of copra for shipment to Colombia was terminated when the purpose of the purchase was frustrated by the cancellation by that country of permission for entry. It is apparent from the instrument now before us that the "desired object" of the parties was to provide "for conducting a hotel and renting office space." It cannot be determined from the record before us whether this object has in fact been "frustrated." The trial court did not find, and we are unable to determine,

whether the evacuation of the Japanese from the vicinity of the premises in question made it impossible to conduct a hotel or rent office space therein. The very location of the premises as regards its proximity to Japanese or non-Japanese establishments appears to be in doubt.

The issues presented should not be decided upon the incomplete factual record now before the court. Upon the going down of the remittitur the trial court should permit such amendments to the pleadings and such proof as will enable the court to accurately ascertain and declare the rights and obligations of the parties.

The judgment is reversed. Neither party to recover costs on appeal.

McComb, J., concurred.

MOORE, P. J.—I concur in the order of reversal but am persuaded that judgment should be entered for defendant. Whether the location of the premises is within the confines of "Little Tokio" or near the precincts of that ghost town is immaterial. Certainly we "know" that it is within the general area where Japanese in 1940 did congregate, maintain mercantile establishments and operate hotels. Why should not the courts take notice of that which is visible to any one who walks or drives upon the streets of Los Angeles in the area in question?

Defendant is of Japanese ancestry. In the prosecution of a war by the United States with the Island Kingdom, the commander in chief of the armed forces, in the lawful execution of his duties ordered defendant and all others of the same status to remove from the coastal cities to interior points where they are held in concentration, virtual prisoners of the army. Such was an unanticipated circumstance and it has made performance of his obligations as lessee "vitally different from what should reasonably have been within the contemplation of both parties when they entered into the contract." (6 Williston on Contracts, Rev. ed., p. 5410.) If the parties never in fact agreed upon their mutual rights and obligations in the event they should be forced into such a crisis upon what principle may a court decree that they did so agree? Clearly the situation is far different from that existing at the making of the contract. Then there was an "equality between two opposing considerations," viz: the

building of plaintiff and the rentals of defendant. Such equality has been violently disturbed by an authority beyond the control of either by reason of an event that neither could have anticipated. Defendant is now detained with those who would have been his patrons in a remote quarter. In such a situation the enforcement of the lease would impose enormous burdens upon him, so enormous that their fulfillment appears well nigh impossible, (Blair's Breach of Contract Due to War, by Paxton Blair, New York, 1940.) The very fact that its enforcement would be extremely onerous to defendant is apparent from the facts recited as well as from the insistence of plaintiffs that defendant operate the lease by remote control. If the terms of the lease were as easy of performance by defendant as they were in February 1940, surely plaintiffs would not squander their time in seeking a decree to compel his performance, for others would to a reasonable certainty be ready to occupy the premises on equivalent terms. The lease was that of a hotel and office building to a person of Japanese origin in a community where people of his blood congregated and transacted business among themselves, where transient Japanese sought accommodations and where Japanese business men established offices. From the very nature of the lease and the surrounding circumstances the parties from the beginning must have known that it could not have been carried out by defendant unless during the term of the lease the presence of the Japanese colony in Southern California continued. They must have contemplated such continuous presence of that group as the basis for the operation of his business by defendant. Therefore, we must read into the lease the implied condition that the parties shall be excused in case performance without the default of either party becomes impossible because of the disappearance of those conditions which at first made the lease desirable (*Straus* v. *Kazemekas*, 100 Conn. 581 [124 A. 234, 238]; *Johnson* v. *Atkins*, 53 Cal. App. 2d 430, 432 [127 P.2d 1027]). Had the current war and the exclusion of the Japanese from Los Angeles been envisaged by these litigants it cannot be doubted that they would have expressly covenanted that the lease should terminate on the day of the exclusion order by the military authorities.

Without the slightest token of bad faith, defendant now finds himself frustrated, unable to fulfill his obligations and

should be relieved by the judgment of this court. (*Johnson* v. *Atkins, supra.*)

A petition for a rehearing was denied May 6, 1943, and respondents' petition for a hearing by the Supreme Court was denied June 10, 1943.