[L. A. No. 18738. In Bank. Oct. 31, 1944.]

CAROLINE A. LLOYD et al., Respondents, v. WILLIAM J. MURPHY, Appellant.

Chas. W. Rollinson and Wm. Roy Ives for Appellant.

Albert W. Leeds for Respondents.

Schultheis & Laybourne and Clifford E. Royston as Amici Curiae on behalf of Respondents.

TRAYNOR, J.—On August 4, 1941, plaintiffs leased to defendant for a five-year term beginning September 15, 1941,

certain premises located at the corner of Almont Drive and Wilshire Boulevard in the city of Beverly Hills, Los Angeles County, "for the sole purpose of conducting thereon the business of displaying and selling new automobiles (including the servicing and repairing thereof and of selling the petroleum products of a major oil company) and for no other purpose whatsoever without the written consent of the lessor" except "to make an occasional sale of a used automobile." Defendant agreed not to sublease or assign without plaintiffs' written consent. On January 1, 1942, the federal government ordered that the sale of new automobiles be discontinued. It modified this order on January 8, 1942, to permit sales to those engaged in military activities, and on January 20, 1942, it established a system of priorities restricting sales to persons having preferential ratings of A-1-j or higher. On March 10, 1942, defendant explained the effect of these restrictions on his business to one of the plaintiffs authorized to act for the others, who orally waived the restrictions in the lease as to use and subleasing and offered to reduce the rent if defendant should be unable to operate profitably. Nevertheless defendant vacated the premises on March 15, 1942, giving oral notice of repudiation of the lease to plaintiffs, which was followed by a written notice on March 24, 1942. Plaintiffs affirmed in writing on March 26th their oral waiver and, failing to persuade defendant to perform his obligations, they rented the property to other tenants pursuant to their powers under the lease in order to mitigate damages. On May 11, 1942, plaintiffs brought this action praying for declaratory relief to determine their rights under the lease, and for judgment for unpaid rent. Following a trial on the merits, the court found that the leased premises were located on one of the main traffic arteries of Los Angeles County; that they were equipped with gasoline pumps and in general adapted for the maintenance of an automobile service station; that they contained a one-story storeroom adapted to many commercial purposes; that plaintiffs had waived the restrictions in the lease and granted defendant the right to use the premises for any legitimate purpose and to sublease to any responsible party; that defendant continues to carry on the business of selling and servicing automobiles at two other places. Defendant testified that at one of these locations he sold new automobiles exclusively and when asked if he were aware that many new automobile dealers were continuing in business replied: "Sure. It

is just the location that I couldn't make a go, though, of automobiles." Although there was no finding to that effect, defendant estimated in response to inquiry by his counsel, that 90 per cent of his gross volume of business was new car sales and 10 per cent gasoline sales. The trial court held that war conditions had not terminated defendant's obligations under the lease and gave judgment for plaintiffs, declaring the lease as modified by plaintiffs' waiver to be in full force and effect, and ordered defendant to pay the unpaid rent with interest, less amounts received by plaintiffs from re-renting. Defendant brought this appeal, contending that the purpose for which the premises were leased was frustrated by the restrictions placed on the sale of new automobiles by the federal government, thereby terminating his duties under the lease.

Although commercial frustration was first recognized as an excuse for nonperformance of a contractual duty by the courts of England (*Krell* v. *Henry* [1903] 2 K.B. 740 [C.A.]; *Blakely* v. *Muller*, 19 T.L.R. 186 [K.B.]; see McElroy and Williams, *The Coronation Cases,* 4 Mod.L.Rev. 241) its soundness has been questioned by those courts (see *Maritime National Fish, Ltd.,* v. *Ocean Trawlers, Ltd.* [1935] A.C. 524, 528-29, 56 L.Q.Rev. 324, arguing that *Krell* v. *Henry, supra,* was a misapplication of *Taylor* v. *Caldwell,* 3 B.&S 826 [1863], the leading case on impossibility as an excuse for nonperformance), and they have refused to apply the doctrine to leases on the ground that an estate is conveyed to the lessee, which carries with it all risks (*Swift* v. *McBean,* 166 L.T.Rep. 87 [1942] 1 K.B. 375; *Whitehall Court* v. *Ettlinger,* 122 L.T.Rep. 540, (1920) 1 K.B. 680, [1919] 89 L.J. [K.B.] N.S. 126; 137 A.L.R. 1199, 1224; see collection and discussion on English cases in *Wood* v. *Bartolino,* —— N.M. —— [146 P.2d 883, 886-87]). Many courts, therefore, in the United States have held that the tenant bears all risks as owner of the estate (*Cusack Co.* v. *Pratt,* 78 Colo. 28 [239 P. 22, 44 A.L.R. 55]; *Yellow Cab Co.* v. *Stafford-Smith Co.,* 320 Ill. 294 [150 N.E. 670, 43 A.L.R. 1173]), but the modern cases have recognized that the defense may be available in a proper case, even in a lease. As the author declares in 6 Williston, Contracts (rev. ed. 1938), § 1955, pp. 5485-87, "The fact that lease is a conveyance and not simply a continuing contract and the numerous authorities enforcing liability to pay rent in spite of destruction of leased premises, however, have made it difficult to give relief. That the tenant has been relieved, neverthe-

less, in several cases indicates the gravitation of the law toward a recognition of the principle that fortuitous destruction of the value of performance wholly outside the contemplation of the parties may excuse a promisor even in a lease. . . .

"Even more clearly with respect to leases than in regard to ordinary contracts the applicability of the doctrine of frustration depends on the total or nearly total destruction of the purpose for which, in the contemplation of both parties, the transaction was entered into."

The principles of frustration have been repeatedly applied to leases by the courts of this state (*Brown* v. *Oshiro*, 58 Cal. App.2d 190 [136 P.2d 29]; *Davidson* v. *Goldstein*, 58 Cal.App. 2d Supp. 909 [136 P.2d 665]; *Grace* v. *Croninger*, 12 Cal. App.2d 603 [55 P.2d 940]; *Knoblaugh* v. *McKinney*, 5 Cal. App.2d 339 [42 P.2d 332]; *Industrial Development & Land Co.* v. *Goldschmidt*, 56 Cal.App. 507 [206 P. 134]; *Burke* v. *San Francisco Breweries, Ltd.*, 21 Cal.App. 198 [131 P. 83]) and the question is whether the excuse for nonperformance is applicable under the facts of the present case.

Although the doctrine of frustration is akin to the doctrine of impossibility of performance (see Civ. Code, § 1511; 6 Cal.Jur. 435-450; 4 Cal.Jur Ten-year Supp. 187-192; *Taylor* v. *Caldwell, supra*) since both have developed from the commercial necessity of excusing performance in cases of extreme hardship, frustration is not a form of impossibility even under the modern definition of that term, which includes not only cases of physical impossibility but also cases of extreme impracticability of performance (see *Mineral Park Land Co.* v. *Howard*, 172 Cal. 289, 293 [156 P. 458, L.R.A. 1916F 1]; *Christin* v. *Superior Court*, 9 Cal.2d 526, 533 [71 P.2d 205, 112 A.L.R. 1153]; 6 Williston, *op. cit. supra*, § 1935, p. 5419; Rest., Contracts, § 454, comment a., and Cal.Ann. p. 254). Performance remains possible but the expected value of performance to the party seeking to be excused has been destroyed by a fortuitous event, which supervenes to cause an actual but not literal failure of consideration (*Krell* v. *Henry, supra; Blakely* v. *Muller, supra; Marks Realty Co.* v. *Hotel Hermitage Co.*, 170 App.Div. 484 [156 N.Y.S. 179]; 6 Williston, *op. cit. supra*, §§ 1935, 1954, pp. 5477, 5480; Restatement, Contracts, § 288).

The question in cases involving frustration is whether

the equities of the case, considered in the light of sound public policy, require placing the risk of a disruption or complete destruction of the contract equilibrium on defendant or plaintiff under the circumstances of a given case (*Fibrosa Spolka Akcyjina* v. *Fairbairn Lawson Combe Barbour, Ltd.* [1942], 167 L.T.R. [H.L.] 101, 112-113; see Smith, *Some Practical Aspects of the Doctrine of Impossibility*, 32 Ill.L.Rev. 672, 675; Patterson, *Constructive Conditions in Contracts*, 42 Columb.L.Rev. 903, 949; 27 Cal.L.Rev. 461), and the answer depends on whether an unanticipated circumstance, the risk of which should not be fairly thrown on the promisor, has made performance vitally different from what was reasonably to be expected (6 Williston, *op. cit. supra*, § 1963, p. 5511; Restatement, Contracts, § 454). The purpose of a contract is to place the risks of performance upon the promisor, and the relation of the parties, terms of the contract, and circumstances surrounding its formation must be examined to determine whether it can be fairly inferred that the risk of the event that has supervened to cause the alleged frustration was not reasonably foreseeable. If it was foreseeable there should have been provision for it in the contract, and the absence of such a provision gives rise to the inference that the risk was assumed.

▇ The doctrine of frustration has been limited to cases of extreme hardship so that businessmen, who must make their arrangements in advance, can rely with certainty on their contracts (*Anglo-Northern Trading Co.* v. *Emlyn Jones and Williams*, 2 K.B. 78; 137 A.L.R. 1199, 1216-1221). ▇ The courts have required a promisor seeking to excuse himself from performance of his obligations to prove that the risk of the frustrating event was not reasonably foreseeable and that the value of counterperformance is totally or nearly totally destroyed, for frustration is no defense if it was foreseeable or controllable by the promisor, or if counterperformance remains valuable. (*La Cumbre Golf & Country Club* v. *Santa Barbara Hotel Co.*, 205 Cal. 422, 425 [271 P. 476]; *Johnson* v. *Atkins*, 53 Cal.App.2d 430, 434 [127 P.2d 1027]; *Grace* v. *Croninger*, 12 Cal.App.2d 603, 606-607 [55 P.2d 940]; *Industrial Development & Land Co.* v. *Goldschmidt*, 56 Cal.App. 507, 511 [206 P. 134]; *Burke* v. *San Francisco Breweries, Ltd.*, 21 Cal.App. 198, 201 [131 P. 83]; *Megan* v. *Updike Grain Corp.* (C.C.A. 8), 94 F.2d 551, 553; *Herne Bay Steamboat Co.*

v. *Hutton* [1903], 2 K.B. 683; *Leiston Gas Co.* v. *Leiston Cum Sizewell Urban District Council* [1916], 2 K.B. 428; *Raner* v. *Goldberg*, 244 N.Y. 438 [155 N.E. 733]; 6 Williston, *op. cit. supra*, §§ 1939, 1955, 1963; Restatement, Contracts, § 288.)

Thus laws or other governmental acts that make performance unprofitable or more difficult or expensive do not excuse the duty to perform a contractual obligation (*Sample* v. *Fresno Flume etc. Co.*, 129 Cal. 222, 228 [61 P. 1085]; *Klauber* v. *San Diego St. Car Co.*, 95 Cal. 353, 358 [30 P. 555]; *Texas Co.* v. *Hogarth Shipping Co.*, 256 U.S. 619, 630 [41 S.Ct. 612, 65 L.Ed. 1123]; *Columbus Ry. Power & Light Co.* v. *Columbus*, 249 U.S. 399, 414 [39 S.Ct. 349, 63 L.Ed. 669]; *Thomson* v. *Thomson*, 315 Ill. 521, 527 [146 N.E. 451]; *Commonwealth* v. *Bader*, 271 Pa. 308, 312 [114 A. 266]; *Commonwealth* v. *Neff*, 271 Pa. 312, 314 [114 A. 267]; *London & Lancashire Ind. Co.* v. *Columbiana County*, 107 OhioSt. 51, 64 [140 N.E. 672]; see 6 Williston, *op. cit. supra*, §§ 1955, 1963, pp. 5507-09). It is settled that if parties have contracted with reference to a state of war or have contemplated the risks arising from it, they may not invoke the doctrine of frustration to escape their obligations (*Northern Pac. Ry. Co.* v. *American Trading Co.*, 195 U.S. 439, 467-68 [25 S.Ct. 84, 49 L.Ed. 269]; *Primos Chemical Co.* v. *Fulton Steel Corp.* (D.C.N.Y.), 266 F. 945, 948; *Krulewitch* v. *National Importing & Trading Co.*, 195 App.Div. 544 [186 N.Y.S. 838, 840]; *Smith* v. *Morse*, 20 La.Ann. 220, 222; *Lithflux Mineral & Chem. Works* v. *Jordan*, 217 Ill.App. 64, 68; *Mederios* v. *Hill*, 8 Bing. 231, 131 Eng.Rep. 390, 392; *Bolckow V. & Co.* v. *Compania Minera de Sierra Minera*, 115 L.T.R. [K.B.] 745, 747).

At the time the lease in the present case was executed the National Defense Act (Public Act No. 671 of the 76th Congress [54 Stats. 601], § 2A), approved June 28, 1940, authorizing the President to allocate materials and mobilize industry for national defense, had been law for more than a year. The automotive industry was in the process of conversion to supply the needs of our growing mechanized army and to meet lend-lease commitments. Iceland and Greenland had been occupied by the army. Automobile sales were soaring because the public anticipated that production would soon be restricted. These facts were commonly known and it cannot be said that the risk of war and its consequences necessitating restriction of the production and sale of automobiles

was so remote a contingency that its risk could not be foreseen by defendant, an experienced automobile dealer. Indeed, the conditions prevailing at the time the lease was executed, and the absence of any provision in the lease contracting against the effect of war, gives rise to the inference that the risk was assumed. Defendant has therefore failed to prove that the possibility of war and its consequences on the production and sale of new automobiles was an unanticipated circumstance wholly outside the contemplation of the parties.

█ Nor has defendant sustained the burden of proving that the value of the lease has been destroyed. The sale of automobiles was not made impossible or illegal but merely restricted and if governmental regulation does not entirely prohibit the business to be carried on in the leased premises but only limits or restricts it, thereby making it less profitable and more difficult to continue, the lease is not terminated or the lessee excused from further performance (*Brown* v. *Oshiro, supra,* p. 194; *Davidson* v. *Goldstein, supra,* p. 918; *Grace* v. *Croninger, supra,* p. 607; *Industrial Development & Land Co.* v. *Goldschmidt, supra; Burke* v. *San Francisco Brewing Co., supra,* p. 202; *First National Bank of New Rochelle* v. *Fairchester Oil Co.,* 267 App.Div. 281 [45 N.Y.S.2d 532, 533]; *Robitzek Inv. Co., Inc.* v. *Colonial Beacon Oil Co.,* 265 App.Div. 749 [40 N.Y.S.2d 819, 824]; *Colonial Operating Corp.* v. *Hannon Sales & Service, Inc.,* 265 App. Div. 411 [39 N.Y.S.2d 217, 220]; *Byrnes* v. *Balcolm,* 265 App.Div. 268 [38 N.Y.S.2d 801, 803]; *Deibler* v. *Bernard Bros. Inc.,* 385 Ill. 610 [53 N.E.2d 450, 453]; *Wood* v. *Bartolino,* —— N.M. —— [146 P.2d 883, 886, 888, 890]). Defendant may use the premises for the purpose for which they were leased. New automobiles and gasoline continue to be sold. Indeed, defendant testified that he continued to sell new automobiles exclusively at another location in the same county.

Defendant contends that the lease is restrictive and that the government orders therefore destroyed its value and frustrated its purpose. █ Provisions that prohibit subleasing or other uses than those specified affect the value of a lease and are to be considered in determining whether its purpose has been frustrated or its value destroyed (see Owens, *The Effect of the War Upon the Rights and Liabilities of Parties to a Contract,* 19 California State Bar Journal 132, 143). It must not be forgotten, however, that "The landlord has not covenanted that the tenant shall have the right to carry on the

contemplated business or that the business to which the premises are by their nature or by the terms of the lease restricted shall be profitable enough to enable the tenant to pay the rent but has imposed a condition for his own benefit; and, certainly, unless and until he chooses to take advantage of it, the tenant is not deprived of the use of the premises.'' (6 Williston, Contracts, *op. cit. supra,* § 1955, p. 5485; see, also, *People* v. *Klopstock,* 24 Cal.2d 897, 901 [151 P.2d 641].)

In the present lease plaintiffs reserved the rights that defendant should not use the premises for other purposes than those specified in the lease or sublease without plaintiffs' written consent. Far from preventing other uses or subleasing they waived these rights, enabling defendant to use the premises for any legitimate purpose and to sublease them to any responsible tenant. This waiver is significant in view of the location of the premises on a main traffic artery in Los Angeles County and their adaptability for many commercial purposes. The value of these rights is attested by the fact that the premises were rented soon after defendants vacated them. It is therefore clear that the governmental restrictions on the sale of new cars have not destroyed the value of the lease. Furthermore, plaintiffs offered to lower the rent if defendant should be unable to operate profitably, and their conduct was at all times fair and cooperative.

The consequences of applying the doctrine of frustration to a leasehold involving less than a total or nearly total destruction of the value of the leased premises would be undesirable. Confusion would result from different decisions purporting to define ''substantial'' frustration. Litigation would be encouraged by the repudiation of leases when lessees found their businesses less profitable because of the regulations attendant upon a national emergency. Many leases have been affected in varying degrees by the widespread governmental regulations necessitated by war conditions.

The cases that defendant relies upon are consistent with the conclusion reached herein. In *Industrial Development & Land Co.* v. *Goldschmidt, supra,* the lease provided that the premises should not be used other than as a saloon. When national prohibition made the sale of alcoholic beverages illegal, the court excused the tenant from further performance on the theory of illegality or impossibility by a change in domestic law. The doctrine of frustration might have been applied, since the purpose for which the property was leased

was totally destroyed and there was nothing to show that the value of the lease was not thereby totally destroyed. In the present case the purpose was not destroyed but only restricted, and plaintiffs proved that the lease was valuable to defendant. In *Grace* v. *Croninger, supra,* the lease was for the purpose of conducting a "saloon and cigar store and for no other purpose" with provision for subleasing a portion of the premises for bootblack purposes. The monthly rental was $650. It was clear that prohibition destroyed the main purpose of the lease, but since the premises could be used for bootblack and cigar store purposes, the lessee was not excused from his duty to pay the rent. In the present case new automobiles and gasoline may be sold under the lease as executed and any legitimate business may be conducted or the premises may be subleased under the lease as modified by plaintiff's waiver. *Colonial Operating Corp.* v. *Hannon Sales & Service, Inc.,* 34 N.Y.S.2d 116, was reversed in 265 App.Div. 411 [39 N.Y.S. 2d 217], and *Signal Land Corp.* v. *Loecher,* 35 N.Y.S.2d 25; *Schantz* v. *American Auto Supply Co., Inc.,* 178 Misc. 909 [36 N.Y.S.2d 747] ; and *Canrock Realty Corp.* v. *Vim Electric Co., Inc.,* 37 N.Y.S.2d 139, involved government orders that totally destroyed the possibility of selling the products for which the premises were leased. No case has been cited by defendant or disclosed by research in which an appellate court has excused a lessee from performance of his duty to pay rent when the purpose of the lease has not been totally destroyed or its accomplishment rendered extremely impracticable or where it has been shown that the lease remains valuable to the lessee.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Carter, J., and Schauer, J., concurred.

Appellant's petition for a rehearing was denied November 28, 1944.