[Civ. No. 14500.   Second Dist., Div. Three.   Feb. 7, 1945.]

LA VERNE W. BROWNE, Respondent, v. FLETCHER AVIATION CORPORATION (a Corporation), Appellant.

Albert Launer, Cosgrove & O'Neil and Leonard A. Diether for Appellant.

Dixon & Howell for Respondent.

SHINN, J.—Plaintiff, a test pilot, brought suit for $2,500 against defendant, a manufacturer of aircraft, as the balance of an agreed price for the testing of a glider which defendant was manufacturing for the Air Corps of the War Department. Plaintiff upon full performance of his contract was to receive $5,000 for his services, he was paid $2,500, and was sued by cross-complaint for the sum of $1,000 which defendant claimed to have paid him in excess of the amount he had earned. Judgment was in favor of plaintiff on his complaint and the cross-complaint, and defendant appeals. Defendant's contract with the War Department called for ten gliders to be furnished, at $8,725 each, and a glider trailer at $1,500, or a total of $88,750. The gliders and the trailer were delivered and accepted. In negotiations with the War Department following completion of the contract, defendant agreed to accept a reduction of $2,500 in the contract price and was paid $86,250.

Defendant's contract with the Air Corps called for testing only the first glider and provided in part as follows: "Reference Paragraph 7, after acceptance of the first Glider, the Contractor shall perform flight tests under the supervision of the procuring agency. These tests shall be performed at Muroc Bombing Range, Muroc, California and shall include the checking of the towing, climbing, and gliding characteristics as well as the functioning of the Government-furnished

Television, Radio and Servo Equipment installed therein. The Air Corps shall provide the towing airplane and pilot, tow cables, releasing devises, and personnel to service the Television, Radio and Servo Equipment. The tests shall not exceed ten (10) flight hours and shall be conducted at the risk of the procuring agency 'notwithstanding the provisions of paragraph F-17A of A. C. Specifications R-1800-D dated 12-1-38 and amendment No. 6, dated 11-1-41.''

The contract between plaintiff and defendant, in its material provisions, reads as follows: ''For the sum of five thousand ($5,000.00) dollars, I, La Verne W. Browne, agree to supply all the necessary test piloting called for under United States Army Air Force Contract W 535 ac 26734. These tests shall be performed at Muroc Bombing Range, Muroc, California, and shall include the checking of the towing, climbing, and gliding characteristics as well as the functioning of the Government furnished Television, Radio and Servo Equipment installed therein. The tests shall not exceed ten (10) flight hours. . . . This agreement may be concelled by mutual agreement of the parties hereto and it is further agreed that on payment of monies due for test flying on a pro rata basis (ratio of hours flown to total ten (10) flight hours) at the time of termination will complete the obligation of both parties. Fletcher Aviation Corporation agrees to pay the five thousand dollars in the following manner: Two thousand five-hundred ($2,500.00) dollars prior to the flight tests and the remaining two thousand five-hundred ($2,500.00) dollars at the completion of this contract.''

The evidence disclosed that if the glider should be flown before the radio equipment was installed, it would be controlled manually by the pilot. The radio equipment was for control of the glider by someone who would operate a radio control from another plane or from the ground, although a pilot would be aboard the glider and would be able to exercise manual control if necessary. Plaintiff made three manually controlled test flights under the supervision of the Army Air Corps on April 26 and 27, 1942, without any of the special equipment having been installed, a total of three hours being required for such flights. He was at all times ready, able and willing to make further test flights, as defendant was to have them made, but the Air Corps furnished no television, radio or Servo equipment, requested no further tests, and on January 5, 1943, after it had accepted delivery of the gliders

and trailer, notified defendant that no other or further flight tests would be requested, and none were requested, of either defendant or plaintiff.

Defendant advanced three theories of nonliability: (1) that plaintiff did not fully perform his obligation; (2) that the modification of the government contract omitting further flight tests made further performance of the Browne contract impossible, and (3) said modification frustrated the object and purpose of the Browne contract and excused further performance of that contract on the part of defendant.

In the argument of its first point defendant challenges the sufficiency of the evidence to support the court's finding that plaintiff fully performed the contract on his part. In determining whether the evidence justified this finding, we must first examine the contract to see what services plaintiff agreed to perform. Defendant's contention is twofold: (a) that plaintiff's services could not have been completed without the making of two kinds of tests, manual and radio controlled, and (b) that they could not have been completed without test flying the glider for a full ten hours. Plaintiff's contention is that his contract was completed when the Air Corps accepted as sufficient the test flights that had already been made and waived the right to require further testing.

Upon the trial testimony of defendant's officers was introduced to the effect that in the negotiations which preceded the execution of the contract, plaintiff agreed to test the glider under manual control for $2,500, and raised his price to $5,000 when it was learned that the Air Corps contract would call for testing under radio control, and one of them testified that it was understood that one type of test would entail approximately equal time with the other. Plaintiff testified that there was no such agreement or understanding. Defendant insists that the testimony of its officers was introduced for the purpose of proving that the contract could not be performed by plaintiff without tests being made of the special equipment. At the same time it disclaims a purpose to prove that plaintiff was to receive $2,500 for the manual flying and $2,500 for the radio controlled flying. When settlement was made with the Air Corps, defendant's intention apparently was to withhold $2,500 from plaintiff's compensation because he had not made the radio controlled tests, and it is clear from the testimony of defendant's officers and from their conduct as well, that when they undertook to

allocate one-half of plaintiff's compensation to each `type of testing they intended to rely upon the alleged oral negotiations, and not upon any provision of the written agreement.

■ Whatever the preliminary proposals may have been, they were of course merged in the written agreement and could not be given effect to add to, alter or modify its plain terms. ■ At the time of trial the claim was made that plaintiff was working upon an hourly basis and had earned only $1,500, but defendant, nevertheless, maintains that the fact that a deduction was agreed to in the settlement with the Air Corps is corroborative evidence that plaintiff's contract was not fully performed. Defendant says in its reply' brief: ''The plaintiff's obligation to flight test the glider under the Browne Contract was the same as the defendant's obligation under the Government Contract, and the fact that the defendant and the Army Air Corps agreed to such a reduction in the contract price is corroborative evidence that the plaintiff did not fully perform the flight tests called for under the terms of the Browne Contract.'' Plaintiff was not a party to that settlement and was not consulted about it. The construction which the Air Corps placed upon the contract and which was acquiesced in by defendant, or vice versa, is entitled to no consideration in an analysis of the contract. In making settlement with defendant, the Air Corps sought a reduction of $10,000 in the contract price on account of the elimination of some of the testing and of an additional $8,000 because defendant was not required to install the special equipment. Defendant's consent to a deduction of $2,500 in order to compromise the claim of the Air Corps for $18,000 would appear to account for its resistance of plaintiff's claim, but the contract cannot, of course, be rewritten to enable defendant to recoup a loss which it voluntarily accepted. By the clear terms of plaintiff's contract his services were to be rendered for a single consideration of $5,000. And if the court had believed the testimony of defendant's officers as to the oral negotiations, there was nothing in that testimony and nothing in the circumstances of the settlement with the Air Corps which would have warranted a construction of the written agreement under which the consideration would be severable.

■ Again, defendant contends that plaintiff was required to make test flights for the full ten hours which the Air Corps could have insisted upon. One of defendant's officers testified, without objection, that it was understood in the negotia-

tions that plaintiff would have to fly ten hours in order to earn $5,000, and it is upon this theory that defendant seeks return of $1,000 of the $2,500 already paid. The evidence of the alleged oral negotiations was incompetent to alter the terms of the written contract and the writing does not admit of the construction that plaintiff was to be paid upon an hourly basis. More is said later of this contention of defendant in discussing the cross-complaint.

Plaintiff's construction of the contract is that he was only required to do the "necessary" test flying required by the Air Corps contract. In this he is correct, as the agreement provides that he was required "to supply all the *necessary* test piloting called for under United States Army Air Forces contract W 535 ac 26734." (Italics added.) A proper construction of defendant's contract with the Air Corps is that tests were to be made for ten hours, or for such lesser time as would be satisfactory to the Air Corps. No specific tests were stipulated in either contract. The uncertainty as to the nature and the extent of the tests that would be required was evidenced by the stipulation that they should not exceed ten flight hours. Plaintiff's contract was prepared by defendant and the use of the qualifying word "necessary" clearly implied that the parties had in mind that full ten hours' testing might not be necessary. The Air Corps, having supervision of the tests, could, at any stage thereof, accept those already made as performance by defendant of its contract and could waive any further tests. Performance by defendant of its contract with the Air Corps, and performance of plaintiff's contract as well, was complete when the Air Corps declared the tests to be sufficient, and it is wholly immaterial that this occurred before any of the special equipment had been installed for testing. The finding that plaintiff fully performed his services under the contract was justified by the evidence.

Defendant's next points, namely, alleged impossibility of further performance, and alleged frustration of the object and purpose of both parties to plaintiff's contract are discussed together in defendant's brief and we will so consider them. The principles under which relief may be granted where further performance has become impossible and those which apply where some occurrence that was not reasonably foreseeable has defeated the object and purpose of a contract were fully considered and discussed in the recent

cases of *Lloyd* v. *Murphy* (1944), 25 Cal.2d 48 [153 P.2d 47], and *Mitchell* v. *Ceazan Tires, Ltd.* (1944), 25 Cal.2d 45 [153 P.2d 53]. They need not ·be repeated or discussed at length by us, for there are obvious reasons why they cannot be successfully invoked by defendant. One reason is ᛫that plaintiff fully performed the contract upon his part. ■ A case of extreme hardship which will justify relief where performance has become impossible, or the purpose of the parties in entering into the contract has been frustrated, cannot exist where the party seeking relief has received the full consideration due him, nor unless the circumstances nearly ᛫or quite completely destroy the purpose both parties to the bargain had in mind. · (Williston on Contracts (1938 ed.), vol. 6, p. 5481.) ■ Defendant received full value for the sum it agreed to pay plaintiff. There was no failure of consideration in that respect. The glider was tested, defendant's contract with the Air Corps was completed, the ten gliders and the trailer were delivered, accepted and paid for in an amount which was satisfactory to defendant. To be sure, the tests lasted for only three hours, but further tests would have been of no advantage or value to defendant. There is no impossibility of performance where one party has rendered services as agreed and nothing remains for the other party to do but pay the agreed compensation.

When the Air Corps accepted the tests as sufficient to furnish all of the information it required, the purpose of the employment contract was fully accomplished. Another answer to the claim of frustration is that the contract did not give defendant the right to deduct any sum from the amount of plaintiff's compensation in the event the Air Corps was satisfied with less than the maximum amount of testing, and it must be deemed to have waived that right. Defendant's argument is essentially the following: it was expected that the Air Corps would require both manual and radio controlled tests for the full ten hours and that plaintiff therefore would be required to make such tests; that the waiver of some of the tests was unexpected and beyond the control of defendant, and that plaintiff, having been relieved of his obligation to make those tests, should not be paid the full sum he would have been entitled to if he had made them. It may be that the Air Corps was entitled to credit under its contract with defendant in case it did not require full ten hours of testing. The entire contract was not received in evidence and we do not know whether there was such a pro-

vision, but it is a common one in construction contracts. If it was not in the Air Corps contract, the waiver of some of the tests by the Air Corps would not have entitled it to a reduction in the contract price, but even then the wording of the contract was a plain warning to defendant that ten hours' testing might not be required. A provision for credit to be given the Air Corps in that event would only have been an additional warning. Defendant contracted for plaintiff's services at a flat price, knowing that the maximum services contracted for might not be required. No attempt has been made to reform the contract upon equitable grounds, and no such grounds exist. It cannot be reformed through the use of the doctrine of commercial frustration.　■　Even where further performance by the party seeking relief will result in extreme hardship and the purpose to be accomplished by the contract has been defeated, which conditions do not exist here, he must bear the loss unless he succeeds in proving that the frustrating event was not reasonably foreseeable. As stated in *Lloyd* v. *Murphy, supra,* 25 Cal.2d 48, at p. 54, ''The courts have required a promisor seeking to excuse himself from performance of his obligations to prove that the risk of the frustrating event was not reasonably foreseeable. . . .''

■　The special equipment was no part of the glider; it was optional with the Air Corps whether it would be furnished and installed. Defendant had been making planes for the Army Air Corps and should have known that the government's programs, plans and requirements in the matter of the production of aircraft for war purposes are not fixed and inflexible. The truth of this fact should have been the more obvious where the contemplated tests were in advanced and experimental fields. We cannot see that defendant proved that the ultimate decisions of the Air Corps were not reasonably foreseeable.

■　One additional argument is made by defendant in support of its demand under the cross-complaint. Its agreement with plaintiff provided for payment upon an hourly basis for the work that had been done in case of termination of the contract by consent of the parties. It is argued that the value of plaintiff's services was fixed by this provision and that plaintiff earned only $1,500 at the hourly rate and was overpaid to the extent of $1,000, which he should return. A sufficient answer is that there was no termination of the agreement by mutual consent. The action of the Air Corps

in acknowledging satisfaction of its contract with defendant, which rendered unnecessary further services by plaintiff, was in no sense a mutual termination of plaintiff's contract by the parties thereto. If defendant had prevailed upon its cross-complaint it would have received at least $2,500 from the Air Corps, as its cost of test-flying the glider, and would have recovered $1,000 of that sum from plaintiff upon the theory that he had been overpaid.

We are of the opinion that the judgment is a correct and just determination of the case and that it should be affirmed.

The judgment is affirmed.

Desmond, P. J., and Wood (Parker), J., concurred.

A petition for a rehearing was denied March 5, 1945, and appellant's petition for a hearing by the Supreme Court was denied April 4, 1945.